No. 97-393

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 17

WILLIAM E. WENDELL,

Plaintiff and Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE

INSURANCE COMPANY, STATE FARM

MUTUAL AUTOMOBILE INSURANCE

COMPANIES, STATE FARM INSURANCE

COMPANIES, THADIUS MOREHEAD,

JOSEPH WANDLER, ERIC BLOM, and

ROBERT CHENOWETH,

Defendants and Respondents.

No

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Silver Bow,

The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Greg J. Skakles, Skakles & Gallagher, Anaconda, Montana

For Respondent:

Susan P. Roy, Garlington Lohn & Robinson, Missoula, Montana

Heard: June 18, 1998

Submitted: June 18, 1998

Decided: February 4, 1999

Filed:

No

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

**¶1. William E. Wendell (Appellant) appeals from the judgment entered by the Second Judicial District Court, Silver Bow County, on its order granting summary judgment to State Farm Mutual Automobile Insurance Company, State Farm Mutual Automobile Insurance Companies, and State Farm Insurance Companies (collectively State Farm). Oral argument was held on June 18, 1998.**

**¶2. The sole issue presented for review is whether the District Court erred in holding that Appellant was not entitled to uninsured motorist (UM) benefits because his injuries were not "caused by an accident arising out of the operation, maintenance or use of an uninsured motor vehicle" as required by the UM provision in Appellant's policies. We conclude that, in the context of UM coverage, an intentional act may be an "accident," and that "accident" is to be viewed from the insured victim's perspective. We also conclude that the causal relationship test to be applied in determining whether the insured's injuries arose out of the use of an uninsured vehicle is whether the injuries originated from, or grew out of, or flowed from the use of the uninsured vehicle. Whether this required causal connection exists in a particular case is a mixed question of fact and law. We reverse and remand for further proceedings consistent with this opinion.**

## BACKGROUND

**¶3. The following facts are undisputed. On the morning of January 19, 1994, Thadius Morehead (Morehead) was driving his vehicle in Butte, Montana with three friends, Joseph Wandler, Eric Blom, and Robert Chenoweth. The men were driving around Butte with the stated purpose of picking fights at random. The men saw a male individual walking on Front Street, exited their vehicle, and chased the individual. The individual, a Safeway employee, managed to get away by running into Safeway. The individual immediately reported the incident and the license plate number of Morehead's vehicle to the police.**

¶4. Morehead and his friends returned to their vehicle and left the scene. Soon thereafter, the men came upon Appellant's vehicle on Harrison Avenue. Appellant was accompanied by a friend and the two were on their way to go fishing. Morehead followed closely behind Appellant and began flashing his lights and honking his horn in an effort to get Appellant's attention and cause him to pull over his car. Thinking the driver to be an acquaintance, Appellant pulled over into the Albertson's parking lot and stopped. Morehead followed and pulled up alongside Appellant. Joseph Wandler (Wandler) exited Morehead's vehicle and approached Appellant. When Appellant rolled down his window, Wandler punched Appellant in the face. When Appellant opened his door, he was dragged out of his vehicle and beaten, punched, and kicked by Wandler and one or more of the other men. The men continued to punch and kick Appellant while he was lying on the ground.

¶5. A bystander who observed the attack called the police, reported the incident, and described Morehead's vehicle. The police were en route to Safeway when they received the dispatch informing them of a similar incident at Albertson's involving the same vehicle that had caused trouble at Safeway. When the police arrived at Albertson's, Eric Blom and Robert Chenoweth started running. Morehead and Wandler were immediately placed under arrest. Blom and Chenoweth were later apprehended by the police and arrested. The four men were charged with violating several criminal laws of Montana.

¶6. At all times pertinent to this action, Morehead maintained an automobile liability insurance policy with State Farm. Appellant asserted a claim under Morehead's policy for injuries Appellant suffered during the attack on January 19, 1994. State Farm denied Appellant benefits stating that Morehead's policy did not cover injuries which were not caused by an accident arising out of the ownership, maintenance, or use of Morehead's vehicle. Once Appellant was denied coverage under Morehead's policy, he asserted a claim for UM benefits under his own policies issued by State Farm. State Farm denied Appellant UM benefits for the same reason it denied benefits under Morehead's policy. State Farm explained that Appellant's policies did not afford UM coverage for injuries which were not caused by an accident arising out of the ownership, maintenance, or use of an uninsured motor vehicle.

¶7. Appellant filed a complaint in District Court against the individuals who had assaulted him to recover damages for personal injury, and against State Farm to

recover UM benefits. State Farm filed an answer and counterclaim for declaratory relief, praying for a determination that neither Morehead's liability policy nor the UM provisions of Appellant's policies afforded Appellant coverage for the injuries he received because the injuries were not caused by an accident arising out of the operation, maintenance or use of Morehead's vehicle. State Farm then filed a motion for summary judgment. In its brief supporting the motion for summary judgment, State Farm treated the Morehead vehicle as an uninsured vehicle based on State Farm's previous denial of coverage under Morehead's liability policy. Thus, State Farm limited the scope of its argument and prayer for relief to UM benefits only. Appellant opposed the motion for summary judgment and, in response to State Farm's brief, likewise limited its argument and prayer for relief to UM benefits.

¶8. The District Court granted summary judgment in favor of State Farm holding that Appellant was not entitled to UM benefits because his injuries did not arise out of the operation, maintenance or use of the Morehead vehicle. The court based its holding on the facts that the tortfeasors acted deliberately to harm Appellant, Appellant was injured while both vehicles were parked, and the tortfeasors were not in their vehicle when they assaulted Appellant. Appellant appeals the order granting summary judgment in favor of State Farm.

## STANDARD OF REVIEW

¶9. Our standard of review in appeals from summary judgment rulings is *de novo*. Ruckdaschel v. State Farm Mutual Auto. Ins. (1997), 285 Mont. 395, 398, 948 P.2d 700, 702. When we review a district court's grant of summary judgment, we apply the same evaluation, based on Rule 56, M.R.Civ.P., as the district court. Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In <u>Bruner</u>, we set forth our inquiry:

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

Bruner, 272 Mont. at 264, 900 P.2d at 903 (citations omitted).

**¶10. In this case, the parties agree that the question before us is whether, under the terms of the UM provisions of Appellant's policies, State Farm was entitled to judgment as a matter of law. The interpretation of an insurance policy presents a question of law. Stutzman v. Safeco Ins. Co. of America (1997), 284 Mont. 372, 376, 945 P.2d 32, 34. Therefore, we review whether the District Court correctly interpreted the UM provisions of Appellant's policies. Stutzman, 284 Mont. at 377, 945 P.2d at 34.**

DISCUSSION

**¶11.** Did the District Court err in holding that Appellant was not entitled to UM benefits because his injuries were not caused by an accident arising out of the operation, maintenance or use of an uninsured motor vehicle?

**¶12. The insuring agreement for UM coverage in Appellant's policies states:**

We [State Farm] will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.

This provision generally tracks the language of Montana's uninsured motorist statute, which requires that all automobile liability insurance contracts issued for vehicles registered in this state include coverage to the insured for bodily injury "caused by accident arising out of the operation or use of [an uninsured] vehicle" unless such coverage is affirmatively rejected by the insured. *See* Section 33-23-201, MCA. The parties do not dispute that Morehead's vehicle is an uninsured vehicle. The parties dispute only (1) whether Appellant's injuries were caused by an accident, and (2) whether the accident arose out of the operation, maintenance or use of Morehead's vehicle.

**¶13. Appellant notes that the District Court focused its holding on the "arising out of . . ." prong of the analysis, and seemingly disposed of the case on this basis alone. However, Appellant also notes that the District Court predicated its holding on a finding that the tortfeasors acted deliberately, and on the public policy set forth in**

**Mutual Service Cas. Ins. Co. v. McGehee (1985), 219 Mont. 304, 711 P.2d 826, against indemnifying tortfeasors for their own intentional torts. In light of the court's discussion and reliance on <u>McGehee</u>, Appellant asserts that the court fully addressed the "caused by accident" prong of the analysis, and indirectly held that because the tortfeasors acted deliberately, Appellant's injuries were not caused by an accident within the meaning of the UM provision. We agree with Appellant that the "caused by accident" prong of the analysis was fully addressed by the District Court. We also note that State Farm did not object to a discussion of the meaning of "accident," and has fully briefed this issue on appeal. Accordingly, we will discuss whether the court correctly interpreted the law with respect to both the "caused by accident" and the "arising out of . . ." prongs of the UM provision analysis. The meaning of "accident" and "arising out of the operation, maintenance, or use of an uninsured motor vehicle" in the context of UM coverage are questions of first impression in Montana.**

*Were Appellant's Injuries Caused By An Accident?*

**¶14. Neither the uninsured motorist statute, § 33-23-201, MCA, nor the insurance contracts in question define the term "accident" or draw a distinction between negligent and intentional acts. In interpreting insurance contracts, we are guided by several well-established principles. This Court is bound to interpret the terms of an insurance contract according to their usual, common-sense meaning as viewed from the perspective of a reasonable consumer of insurance products. <u>Stutzman</u>, 284 Mont. at 376, 945 P.2d at 34. Further, this Court may not rewrite the contracts at issue, but must enforce them as written if their language is clear and explicit. <u>Stutzman</u>, 284 Mont. at 376, 945 P.2d at 34. Ambiguities in the language of the contracts will be construed against the insurer. Farmers Alliance Mutual Ins. Co. v. Holeman, 1998 MT 155, ¶ 25, 55 St.Rep. 601, ¶ 25, 961 P.2d 114, ¶ 25. An ambiguity exists when the contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations. <u>Holeman</u>, ¶ 25. We examine the question of ambiguity in insurance contract language from the viewpoint of a consumer with average intelligence but not trained in the law or insurance business. <u>Holeman</u>, ¶ 25.**

**¶15. With these principles of insurance contract interpretation in mind, we turn to the UM provision at issue. Without specifically alleging ambiguity, Appellant intimates that the term "accident" is ambiguous. Appellant notes that while some courts view "accident" as "simply a happening that is unexpected and unintended,"**

**McIntosh v. State Farm Mut. Auto. Ins. Co. (Minn. 1992), 488 N.W.2d 476, 478, other courts have concluded that such a simple definition is unworkable in the context of insurance contracts because it fails to resolve an important question: from whose perspective shall a court determine whether a happening is unexpected or unintended?** *See e.g.* **American Protection Ins. Co. v. Parker (Ga. Ct. App. 1979), 258 S.E.2d 540, 542 (the fact that "an injury is caused by an intentional act does not preclude it from being caused by 'accident' if in that act something unforeseen, unusual and unexpected occurs which produces the result"); State Farm Mut. Auto. Ins. Co. v. McMillan (Colo. 1996), 925 P.2d 785, 792-93 (court determined "accident" to be an ambiguous term).** *See also* **Fox v. Country Mut. Ins. Co., 1998 WL 610210 at 5 (Or.) ("[T]he difficulty is in the tendency to think that there is one all-encompassing definition of 'accident' which accommodates all circumstances. There is no such thing") (citation omitted). In a case similar to the one at bar, the Oregon Supreme Court stated:**

Whether the occurrence is accidental depends entirely upon the point from which the question is viewed. If the occurrence is looked at from the point of view of the person who inflicts the harm . . ., it is intentional. On the other hand, if [the occurrence] is looked at from the victim's standpoint, it is unforeseen, unintended, unexpected, and has every aspect of an accident as long as the occurrence was not provoked. Therefore, it is necessary to decide which point of view is the proper one from which to solve the present question.

Davis v. State Farm Mut. Auto. Ins. Co. (Or. 1973), 507 P.2d 9, 10.

**¶16. In light of this apparent ambiguity concerning the term "accident," and the established rule that ambiguities are to be resolved in favor of the insured, Holeman, ¶ 25, Appellant urges this Court to adopt and apply to UM coverage the following definition of "accident" taken from Black's Law Dictionary, 5th Edition:**

An accident . . . is an event happening without any human agency, or, if happening through such agency, an event which, under circumstances, is unusual and not expected *by the person to whom it happens.* (Emphasis added.)

Appellant further argues that, in the context of UM coverage, viewing whether an "accident" has occurred from the standpoint of the insured victim is the better reasoned rule as it is in keeping with the nature and purpose of UM coverage, and the reasonable expectations of the insured.

**¶17. Appellant distinguishes the nature and purpose of liability coverage from that of UM coverage. Appellant asserts that liability coverage is third party coverage the purpose of which is to indemnify the insured for damages which must be paid to others as a result of the insured's tortious conduct. In contrast, UM coverage is first party coverage the purpose of which is not indemnification, but rather to compensate the insured for losses produced by uninsured motorists. Appellant notes that this Court has described the compensatory purpose of UM coverage in very broad terms:**

The purpose of the [UM] statute is to protect completely, those willing to accept its protection, from all harm, whatever their status--passenger, driver, pedestrian--at the time of injury, produced by uninsured motorists. The only restrictions are that the plaintiff must be an insured, the defendant motorist uninsured, and that plaintiff be legally entitled to recover.

Guiberson v. Hartford Cas. Ins. Co. (1985), 217 Mont. 279, 289, 704 P.2d 68, 74 (citation omitted). Courts in other jurisdictions have also distinguished UM coverage from liability coverage and have pursued a liberal construction of UM coverage. *See e.g.,* Davis, 507 P.2d at 11 ("this portion of the policy [UM coverage] . . . resembles an accident policy for the victim of the uninsured motorist"); Leatherby Ins. Co. v. Willoughby (Fla. Dist. Ct. App. 1975), 315 So.2d 553, 555 ("uninsured motorist protection . . . was designed for the protection of injured persons, not for the benefit of insurance companies or motorists who cause damage to others . . ."); Britt v. Phoenix Indem. Ins. Co. (N.M. 1995), 907 P.2d 994, 998 ("[T]he uninsured motorist statute was intended to expand insurance coverage and to protect individual members of the public against the hazard of culpable uninsured motorists")(citation omitted).

**¶18. Based on the distinction between UM coverage and liability coverage, and based on this Court's liberal interpretation of UM coverage as described in Guiberson, Appellant argues that the UM statute should not be interpreted so narrowly as to preclude coverage to insured innocent victims of losses caused by uninsured**

motorists. Appellant argues that from his standpoint, the tortfeasors' acts and the injuries produced by those acts were unexpected and unintended and, therefore, constitute an "accident." He argues that this injury-producing incident is precisely the type of "accident" for which UM coverage was designed.

¶19. Appellant notes that while there exists a split of authority among courts in other jurisdictions which have considered whether an intentional tort may be an "accident" for purposes of UM coverage, the majority have answered the question in the affirmative holding that "accident" should be viewed from the insured victim's perspective. *See* Alabama Farm Bureau Mut. Cas. Ins. Co. v. Mitchell (Ala. Civ. App. 1979), 373 So.2d 1129; State Farm Mut. Auto. Ins. Co. v. McMillan (Colo. 1996), 925 P.2d 785; Leatherby Ins. Co. v. Willoughby (Fla. Dist. Ct. App. 1975), 315 So.2d 553; American Protection Ins. Co. v. Parker (Ga. Ct. App. 1979) 258 S.E.2d 540; Ganiron v. Hawaii Ins. Guar. Ass. (Haw. 1987), 744 P.2d 1210; Country Cos. v. Bourbon (Ill. App. Ct. 1984), 462 N.E.2d 526; Milwaukee Mut. Ins. Co. v. Butler (S. D. Ind. 1985), 615 F.Supp. 491; Redden v. Doe (La. Ct. App. 1978), 357 So.2d 632; Harris v. Nationwide Mut. Ins. Co. (Md. Ct. Spec. App. 1997), 699 A.2d 447; Keeler v. Farmers and Merchants Ins. Co. (Mo. Ct. App.), 724 S.W.2d 307; Britt v. Phoenix Indem. Ins. Co. (N.M. 1995), 907 P.2d 994; Nationwide Mut. Ins. Co. v. Roberts (N.C. 1964), 134 S.E.2d 654; Celina Mut. Auto. Ins. Co. v. Saylor (Ohio Misc. 1973), 301 N. E.2d 721; Stucky v. Long (Okla. Ct. App. 1989), 783 P.2d 500; Davis v. State Farm Mut. Auto. Ins. Co. (Or. 1973), 507 P.2d 9; Gen. Accident Ins. Co. of Am. v. Olivier (R.I. 1990), 574 A.2d 1240; Stepp v. Hill (Tenn. Ct. App. 1993), 1993 WL 181984; Whitehead v. State Farm Mut. Auto. Ins. Co. (Tex. Ct. App. 1997), 952 S.W.2d 79. *But see* McIntosh v. State Farm Mut. Auto. Ins. Co. (Minn. 1992), 488 N.W.2d 476, 479 (under UM coverage, "accident" is to be viewed from the perspective of the tortfeasor); Lindstrom v. Hanover Ins. Co. (N.J. 1994), 649 A.2d 1272, 1276 (holding that Sciascia v. American Ins. Co. (N.J. Super. 1982), 443 A.2d 1118, which held that for purposes of UM coverage, accident must be viewed from the insured victim's perspective, was "no longer respectable authority"); McCarthy v. Motor Vehicle Accident Indemnification Corp. (N.Y. App. Ct. 1962), 188 N.E.2d 405 (where Motor Vehicle Accident Indemnification Corporation, a quasi-public institution established by the state, was exonerated from payment of liability benefits due to the intentional acts exclusion of the automobile liability policy, insurer was therefore not liable under its UM endorsement for injuries caused by intentional act); Landry v. Dairyland Ins. Co. (Vt. 1997), 701 A.2d 1035, 1036 (same holding but under fact that insured's UM coverage contained express exclusion for injuries caused by intentional

acts); Roller v. Stonewall Ins. Co. (Wash. 1990), 801 P.2d 207, 210 ("accident" is event occurring without design, intent or obvious motivation).

**¶20. Appellant also argues that application of the insured's viewpoint to the definition of "accident" comports with the reasonable expectations of the insured. Appellant asserts that a UM policyholder, having paid the premiums for UM coverage, legitimately expects coverage of injuries caused by uninsured motorists regardless of whether the injuries are intentionally or negligently caused. In support of this assertion, Appellant refers to one commentator who writes:**

[F]rom the perspective of the injured person, unless the tortious conduct of the uninsured or unidentified motorist was provoked by the injured person, the events and the injuries resulting from intentional acts are indistinguishable from those that result from negligent acts. In other words, when injuries are viewed from the vantage point of an injured person, the cause of the injuries is no less fortuitous than the situation in which a person is injured as a result of the negligent operation of an uninsured vehicle.

. . . . .

Uninsured motorist insurance coverage terms should be structured and interpreted to implement the public's interest of fostering the public policy, manifested by the uninsured motorist statutes and financial responsibility legislation, of providing indemnification to innocent victims. Moreover, extending coverage for such occurrences almost certainly is in accord with the reasonable and, to the extent they exist for most insurance purchasers, actual expectations that the coverage will provide them with compensation in such cases.

1 Alan I. Widiss, Uninsured and Underinsured Motorist Insurance § 10.2, at 512-13 (2d ed. 1990) (footnote omitted).

**¶21. Appellant acknowledges the cases cited by State Farm in its argument to the District Court where this Court upheld denials of insurance benefits to victims of intentional torts, but argues that these cases are distinguishable on two grounds. *See* McGehee, 219 Mont. at 306-08, 711 P.2d at 827-28 (affirming denial of general liability insurance benefits to victim of assault pursuant to the express language of the assailant's contract excluding from coverage injuries resulting from intentional acts of the insured); Burns v. Underwriters Adjusting Co. (1988), 234 Mont. 508, 510, 765 P.2d 712, 713 (affirming denial of general liability insurance benefits to victim of**

assault where contract contained nearly identical contract exclusion as that contained in McGehee); New Hampshire Ins. Group v. Strecker (1990), 244 Mont. 478, 481-82, 798 P.2d 130, 132 (same result for victim of sexual molestation seeking benefits under general liability insurance contract with similar exclusion); Farmers Union Mut. Ins. v. Kienenberger (1993), 257 Mont. 107, 109, 847 P.2d 1360, 1361 (affirming denial of coverage under similar facts and policy language as Strecker).

¶22. First, Appellant notes that the insurance contracts in the above cases expressly excluded from coverage intentional acts of the insured, whereas the UM provision *sub judice* contains no such exclusion and fails to otherwise define or clarify the term "accident." Second, Appellant notes that while it was reasonable for the Court to premise its holding in the above cases on the public policy against indemnifying wrongdoers for their intentional torts, *see* McGehee, 219 Mont. at 308, 711 P.2d at 828, it is not reasonable to do so here. Appellant argues that in a case such as this, where the contract at issue is first party coverage and the insured is the innocent victim rather than the tortfeasor, the danger of a tortfeasor being indemnified for his wrongful act does not exist. Therefore, Appellant argues, the public policy consideration underlying the above decisions is inapplicable to the instant case. *See* Keeler v. Farmers and Merchants Ins. Co. (Mo. App. Ct. 1987), 724 S.W.2d 307, 309-10; Redden v. Doe (La. App. Ct. 1978), 357 So.2d 632, 633-34; Widiss, supra, at 513. Appellant adds that State Farm's subrogation against Morehead and his companions would defray any "indirect benefit" that State Farm claims would accrue to the men if Appellant recovers UM benefits. Moreover, Appellant points out that his assailants are being punished for their actions pursuant to penalties provided by the criminal code.

¶23. In response to Appellant's arguments, State Farm counters that we need not adopt a new or different definition for the term "accident" because the term is unambiguous. State Farm argues that we should reject the application of a subjective perspective to the term "accident" and instead apply the objective, common-sense, plain meaning to the term. State Farm views the common-sense, plain meaning of the term "accident" as encompassing only events that occur without intention or design, "[t]hus, the perspective of the insured as opposed to the tortfeasor is not a relevant inquiry. Either an incident is an accident or it is not." Roller, 801 P.2d at 210. State Farm argues that it should be self-evident that "accident" does not encompass a criminal assault where, by definition, someone has acted intentionally.

**¶24. Further, State Farm refutes Appellant's claims regarding the nature and purpose of UM coverage. Regarding the nature of UM coverage, State Farm cites <u>McIntosh</u>, 488 N.W.2d at 479, and argues that UM coverage is not "true" first party coverage, like health insurance or no-fault coverage. State Farm asserts that health insurance and no-fault coverage are true first party coverages because they are triggered solely upon the insured being harmed. State Farm argues that the "focus" of these coverages is on the insured. State Farm distinguishes these coverages from UM coverage, which is triggered solely upon a determination that the insured was harmed by an uninsured motorist. State Farm argues that, similar to liability coverage, the "focus" of UM coverage is on the uninsured motorist.**

**¶25. Regarding the purpose of UM coverage, State Farm argues that it is not to compensate innocent persons injured by uninsured motorists, but rather to provide "a substitute liability policy which stands as proxy for that which the uninsured motorist chose not to carry." <u>McIntosh</u>, 488 N.W.2d at 478. State Farm adheres to the <u>McIntosh</u> view that "uninsured motorist coverage more closely corresponds to security for tort liability than it does to basic reparation benefits." <u>McIntosh</u>, 488 N. W.2d at 479. In further support of its position, State Farm cites Sullivan v. Doe (1972), 159 Mont. 50, 60, 495 P.2d 193, 198, wherein this Court stated:**

The legislative purpose behind the enactment of . . . "uninsured motorist" coverage is . . . simply to *place the injured policyholder in the same position* he would have been if the uninsured motorist had liability insurance . . . . (Emphasis added.)

Likewise, in Hubbel v. Western Fire Ins. Co. (1985), 218 Mont. 21, 25, 706 P.2d 111, 113, we stated:

[U]ninsured motorist provisions *should not be used to place the injured policyholder in a better position* than he would be under the ordinary provisions of an existing insurance policy. (Emphasis added.)

**¶26. State Farm argues that in a case such as the one at bar, where the tortfeasor was covered by legally adequate automobile liability insurance, but due to the tortfeasor's commission of an intentional tort he is deemed "uninsured," recovery of damages under the injured victim's UM insurance would place the injured victim in a better**

**position than he would be if recovery had been allowed under the tortfeasor's liability policy. State Farm notes that the Washington Supreme Court reached this same conclusion in the context of underinsured motorist coverage:**

[I]f McKay [the assailant] had carried automobile insurance, Roller would have received no coverage for the injuries he sustained because traditional [liability] policies do not cover intentional acts by the insured. We adopt this reasoning and conclude that to provide underinsured motorist coverage to Roller would effectively place him in a better position than he would have been in if McKay had "adequate liability insurance" coverage.

Roller, 801 P.2d at 210 .

**¶27. State Farm also criticizes Appellant's assertion that the public policy against indemnifying tortfeasors for their wrongful acts is inapplicable to UM coverage. State Farm argues that if UM coverage is extended to victims of criminal assault, the assailants are "indirectly" receiving insurance coverage and are not paying for the victim's damages. State Farm argues that regardless of the type of insurance under which a victim recovers, the consequences of the assailants' acts are still muted. State Farm further argues that it is prevented from subrogating against the assailants in this case because, pursuant to Continental Ins. Co. v. Bottomly (1991), 250 Mont. 66, 70, 817 P.2d 1162, 1165, an insurer may not subrogate against its own insured.**

**¶28. Finally, State Farm refutes Appellant's claim that applying a subjective standard to the term "accident" comports with the reasonable expectations of the insured. State Farm quotes McIntosh, 488 N.W.2d at 479, wherein the Minnesota Supreme Court stated:**

Indeed, we do not think those who pay premiums into a pool for uninsured motorist coverage reasonably expect those funds to be available to pay compensation for injuries for which, if the uninsured motorist were insured, his insurance company would not have to pay.

Similarly, State Farm argues that the average insured does not reasonably expect that UM coverage equates to general "crime insurance."

**¶29. Upon consideration of the parties' arguments and authorities, we conclude that the term "accident" is ambiguous because it is subject to more than one reasonable interpretation.** *See* Holeman, **¶ 25. In drawing this conclusion, we find compelling the facts that neither the statute nor the UM provision at issue defines "accident" or excludes from coverage injuries caused by intentional, as opposed to negligent, acts of the uninsured motorist. There exists no legislative history from which to ascertain whether the Montana Legislature, in enacting the UM statute, intended to exclude from coverage injuries caused by intentional acts of the uninsured motorist. In interpreting a statute, this Court can neither insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA. The fact that courts are split as to the meaning of "accident" further confirms our belief that the term is subject to more than one reasonable interpretation.**

**¶30. Like the majority of jurisdictions which have considered the meaning of "accident," we believe that, when viewed from the standpoint of the insured victim, an injury-producing incident is no less fortuitous simply because the tortfeasor acted intentionally. Like many courts espousing the majority view, we are persuaded by the reasoning articulated in Celina Mut. Ins. Co. v. Taylor (Ohio Misc. 1973), 301 N. E.2d 721, 723, wherein the court stated:**

[In this case] we deal with the subject of uninsured motorists coverage. The [insureds] have paid the insurance premiums and have consciously contracted with the [insurer] for protection. The intent in the mind of the insured at the time of injury should determine whether the acts are accidental or intentional. To look through the eyes of the uninsured rather than the insured in this factual situation would require an unconscionable twisting of the obvious purpose of purchasing insurance coverage.

All reason and logic would require a construction and interpretation that intent of mind should be taken from the viewpoint of the insured. Since the insured in the instant case was clearly not acting intentionally to warn herself, since the [insured] in the instant case was the party privy to the insurance contract; since the [insured] herein is the party who paid the premium for coverage to protect herself from the risk of injury caused by an uninsured third person it is the court's belief that the provisions of the insurance policy must be construed most favorably from the insured's viewpoint.

**¶31. We reject State Farm's argument that there exists an all-encompassing**

definition of "accident" suitable for all purposes, and that "accident" includes only events that occur without intention or design. On this point, we find State Farm Mut. Auto. Ins. Co. v. McMillan (Colo. 1996), 925 P.2d 785, particularly instructive. In McMillan, the victim of a criminal assault made a claim for UM benefits with her insurer, State Farm. State Farm argued that because the tortfeasor acted intentionally, the victim's injuries were not caused by an "accident" within the meaning of the UM provision. In rejecting this argument, the Colorado Supreme Court noted:

[A]pplication of State Farm's theory of uninsured motorist coverage would lead to absurd and unintended results. State Farm's argument is that only negligent, as opposed to intentional, acts of a tortfeasor are covered under the policy. During oral argument, State Farm conceded that in accordance with its position, if the car driven by an insured was struck by the car of an uninsured motorist who deliberately ignored a traffic signal and drove through a stop sign, the insured would not be covered under the policy because the resulting collision would not be an "accident." We cannot countenance such an unreasonable result.

McMillan, 925 P.2d at 794 n.12. We agree with the Colorado Supreme Court that defining "accident" in such a way as to include only negligent acts, or events which occur without intention or design, would lead to absurd results and undermine the purpose of UM coverage.

¶32. In the course of arguing the meaning of "accident," both parties engage in unyielding debate over the nature and purpose of UM coverage, the reasonable expectations of the insured, and whether the public policy against indemnifying tortfeasors for their intentional acts is applicable in the context of UM coverage. We will discuss these topics to the extent they are germane to whether the term "accident" is ambiguous.

¶33. The major premise underlying State Farm's argument that "accident" should not include intentional acts is that UM coverage more closely resembles liability insurance than accident or reparation insurance. State Farm argues that UM coverage was intended to be a substitute for the liability policy that the uninsured motorist chose not to carry, McIntosh, 488 N.W.2d at 478, and was designed to put the injured policyholder in the same position he would have been if the uninsured

motorist had liability insurance. <u>Sullivan</u>, 159 Mont. at 60, 495 P.2d at 198; *see also* <u>Hubbel</u>, 218 Mont. at 25, 706 P.2d at 113. Applying these principles to the instant case, State Farm argues that allowing Appellant to recover UM coverage, when he could not recover under the tortfeasor's liability policy, effectively places him in a better position and, therefore, contravenes the purpose of UM coverage. We cannot agree with State Farm's analysis because <u>Sullivan</u> and <u>Hubbel</u> are both distinguishable from the instant case. Moreover, a closer reading of <u>Sullivan</u> reveals that it is inapposite to the position advanced by State Farm.

¶34. In <u>Sullivan</u>, a passenger police officer was injured when the vehicle in which he was riding collided with an unidentified motorist. The question before the Court concerned the validity of an express provision of the passenger's policy requiring any recovery of UM benefits to be offset by recovery of worker's compensation benefits. We held the provision invalid because it was at variance with the purpose of UM coverage. <u>Sullivan</u>, 159 Mont. at 60-61, 495 P.2d at 198-99. It is significant that in describing the purpose of UM coverage, this Court stated that it was *both* "to provide protection for the . . . policyholder against the risk of inadequate compensation for injuries or death caused by the negligence of financially irresponsible motorists," *and* "to place the injured policyholder in the same position he would have been if the uninsured motorist had liability insurance." <u>Sullivan</u>, 159 Mont. at 60, 495 P.2d at 198. We infer from the Court's reasoning and invalidation of the off-set provision that the Court did not believe that the passenger's recovery of UM benefits, in addition to worker's compensation benefits, placed him in a "better" position. We fail to see how <u>Sullivan</u> supports State Farm's argument.

¶35. In <u>Hubbel</u>, two co-partners of an oil business, Hubbel and Pearson, who were covered by worker's compensation insurance, were killed in an automobile collision. The issue was whether the spouse of Hubbel was entitled to UM benefits under Mr. Pearson's insurance policy in addition to worker's compensation benefits. This Court answered the question in the negative, concluding that Pearson was not an "uninsured motorist" within the meaning of the UM provision. <u>Hubbel</u>, 218 Mont. at 25-26, 706 P.2d at 113-14. The Court noted that, due to the exclusivity provision of the Worker's Compensation Act, Mrs. Hubbel's exclusive remedy was worker's compensation benefits and Mr. Pearson's estate was immune to any cause of action by Mrs. Hubbel. <u>Hubbel</u>, 218 Mont. at 25, 706 P.2d at 112. The Court further commented that the insurance company was placed in a "catch-22" by the situation of Mr. Pearson carrying adequate auto insurance, yet being deemed "uninsured"

simply because of the insurance company's refusal to provide coverage due to the exclusivity provision of the Worker's Compensation Act. <u>Hubbel</u>, 218 Mont. at 25, 706 P.2d at 113. Citing <u>Sullivan</u>, the Court reasoned that allowing Mrs. Hubbel recovery of both worker's compensation benefits and UM benefits would place her in a better position than if she recovered only worker's compensation benefits and, thus, would be contrary to the intent of the legislature in enacting the UM statute. <u>Hubbel</u>, 218 Mont. at 25-26, 706 P.2d at 113-14. Based on these considerations, the Court determined that Mr. Pearson was not an uninsured motorist within the meaning of the policy.

¶36. <u>Hubbel</u> is distinguishable from the instant case. In <u>Hubbel</u>, the Court was faced with *two* possible sources of compensation for Mrs. Hubbel, worker's compensation benefits and UM benefits, and an exclusivity provision that made one yield to the other. These factors are not present in the instant case. Here, Appellant cannot collect under the tortfeasor's liability policy and, thus, has only *one* source of compensation, UM benefits. We fail to see how Appellant's recovery of UM benefits would place him in a better position. Rather, he would be receiving the same compensation he would have received had he been entitled to recover under the tortfeasor's liability policy.

¶37. Aside from being distinguishable, we note that the reasoning of the majority opinion in <u>Hubbel</u> stands on shaky ground. In a dissenting opinion to <u>Hubbel</u>, Justice Sheehy commented that the majority was uninstructed by <u>Sullivan</u>, and essentially turned <u>Sullivan</u> on its head by ignoring "the legislative policy to provide UM coverage which we have heretofore strongly supported." <u>Hubbel</u>, 218 Mont. at 27-29, 706 P.2d at 115. Justice Sheehy further commented:

The basic fault in the reasoning of the majority . . . is they have regarded the interpretation of the Worker's Compensation Act and the Uninsured Motorist Coverage Act from the viewpoint of the insurer, and not from the viewpoint of the claimant. To State Farm, Pearson is not uninsured because its policy does provide liability coverage to him. To the Hubbel claimants, however, Pearson is uninsured because, through a legal technicality, . . . the Hubbel heirs cannot obtain a judgment against Pearson which could be satisfied under the liability portion of the State Farm policy. If State Farm is caught in a catch-22, then the Hubbel heirs are caught in a catch-44, a double whammy. State Farm gets to keep the money for which it collected a premium; the Hubbel heirs do not get to collect anything under the uninsured motorist coverage.

Hubbel, 218 Mont. at 29, 706 P.2d at 115-16.

**¶38. Based on the weaknesses in its arguments, we reject State Farm's position that UM coverage more closely resembles liability coverage than accident or reparation coverage, and that Appellant would be placed in a better position by recovery of UM benefits in contravention of the purpose of UM coverage.**

**¶39. Regarding the next topic, the reasonable expectations of the insured, we agree with Appellant's analysis. We believe the average insured reasonably expects that, so long as an injury-causing event is unforeseen and unprovoked by the insured, injuries caused by uninsured motorists will be covered by UM coverage regardless of whether they were caused negligently or intentionally. State Farm's argument, that the average insured does not reasonably expect UM coverage to be general "crime insurance," is disingenuous in light of the limited scope of our discussion in this first section of the opinion. Here, we are only discussing whether "accident" should be viewed from the insured victim's perspective. It is illogical to assume that viewing "accident" from the standpoint of the insured victim would make UM coverage equivalent to general crime insurance. It appears State Farm's remark is more directed to the second section of this opinion which addresses the remoteness question: what degree of causal connection must exist between the accident and the tortfeasors' use of the uninsured vehicle in order for the accident to have arisen out of the operation, maintenance or use of the vehicle? We believe the "arising out of the use" element is the most formidable obstacle to a victim's recovery of UM coverage. Once a court has been persuaded that a victim's injuries arose out of the use of an uninsured vehicle, it should have little difficulty accepting the notion that intentional torts may be "accidents" and that permitting victims of intentional torts to recover UM benefits does not equate to general crime insurance.**

**¶40. Regarding the last topic, whether the public policy against indemnifying tortfeasors for their own intentional torts is applicable in the context of UM coverage, we agree with Appellant's analysis. Under UM coverage, the victim of the intentional tort is the insured and the possibility of tortfeasors being indemnified does not exist. Thus, the public policy against indemnifying tortfeasors for their intentional torts, a policy which serves the purpose of punishment and deterrence, is inapplicable in the context of UM coverage. We disagree with State Farm that Continental Ins. Co v. Bottomly (1991), 250 Mont. 66, 817 P.2d 1162, precludes**

subrogation against the tortfeasors in this case. <u>Bottomly</u> only precludes subrogation by an insurer against its insured *under a policy that the insurer has with the insured*. *See* <u>Bottomly</u>, 250 Mont. at 69-70, 817 P.2d at 1164-65. Here, if Appellant recovered UM benefits, the policy under which State Farm would have a right of subrogation is the one issued to Appellant. Thus, State Farm could subrogate against the tortfeasors because they would be third parties.

¶41. Having determined that the term "accident" is ambiguous, we hold that an intentional act may be an accident for purposes of UM coverage. Absent contract language to the contrary, whether an "accident" has occurred must be viewed from the standpoint of the insured. Not only are we obligated to hold this way, pursuant to the rule that ambiguities in an insurance contract must be construed in favor of the insured, <u>Holeman</u>, ¶ 25, but we believe our holding is the better-reasoned rule as it is in keeping with the nature and purpose of UM coverage and the reasonable expectations of the insured. The facts are undisputed that Appellant neither provoked, intended, or expected the injuries inflicted by Morehead and his companions. Applying our holding today, it follows that the intentional assault on Appellant was an "accident" for purposes of UM coverage.

*Did the Accident Arise Out of the*

*Operation, Maintenance, or Use of Morehead's Vehicle?*

¶42. The parties agree that, under the facts of this case, the relevant inquiry centers upon the use of Morehead's vehicle, rather than its operation or maintenance. The parties also agree that in order for the accident to have "arisen out of the use" of Morehead's vehicle, there must exist a sufficient nexus, or causal connection, between the tortfeasors' use of Morehead's vehicle and Appellant's injuries. The parties dispute, however, the legal test to be applied in determining the existence of a sufficient nexus or causal connection in the context of UM coverage.

¶43. Similar to his argument in the first section of this opinion, Appellant argues that the phrase "arising out of the use" should be broadly interpreted to effect the remedial purposes of UM coverage. Without advocating a particular test, Appellant urges this Court to adopt an expansive interpretation of "arising out of the use"

which does not require that the injury be proximately caused by the use of the uninsured vehicle in a strict legal sense, but rather requires a showing that some nexus exists between the injury and the use of the uninsured vehicle. Appellant maintains that the fact that some instrumentality independent of the uninsured vehicle was the direct cause of injury should not, by itself, preclude UM coverage. Appellant cites General Accident Ins. Co. of Am. v. Olivier (R.I. 1990), 574 A.2d 1240; Wausau Underwriters Ins. Co. v. Howser (S.C. 1992), 422 S.E.2d 106; and Insurance Co. of N. Am. v. Dorris (Ga. App. Ct. 1982), 288 S.E.2d 856, as both support for his position and examples of expansive tests which this Court may adopt to serve the purposes of UM coverage.

¶44. In Olivier, the insured was shot by a motorist, with whom she had previously been involved in a collision, as she stood away from her car waiting to give a statement to the police about the collision. In holding that the insured's injuries arose out of the use of the uninsured vehicle, the Florida Supreme Court construed the phrase "arising out of the use" as "not meaning 'proximately caused by' but as having a broader meaning that simply require[s] some nexus between the motor vehicle and the injury." Olivier, 574 A.2d at 1242 (following Government Employees Ins. Co. v. Novak (Fla. 1984), 453 So.2d 1116 (construing the phrase in the context of personal injury protection benefits)). In support of its expansive test, the court reasoned that it was unnecessary for the uninsured vehicle to be the instrumentality of the injury because the policy should be interpreted to effect broad coverage. Olivier, 374 A.2d at 1242. The court embraced the principle that "the clause 'arising out of the use of the motor vehicle' is framed in general, comprehensive terms in order to express the intent to effect broad coverage." Olivier, 374 A.2d at 1242.

¶45. In Howser, an insured was injured when she was pursued, threatened, and then shot by an unknown assailant in a car. At the time of the shooting, the insured was driving her vehicle when the unknown motorist began following her and then "bumped" the back of her vehicle with his automobile. The motorist pulled alongside the insured and threatened her with a gun while attempting to get her to pull over. When the insured tried to escape in her vehicle, the motorist fired several shots at her vehicle and she was wounded. Howser, 422 S.E.2d at 107.

¶46. In resolving whether the insured's injuries "arose out of the use" of the uninsured vehicle, the court stated that the test was "something less than proximate cause and something more than the vehicle being the mere site of the injury" or,

more simply, whether "the use of the vehicle causally contributed to the claimant's injuries." Howser, 422 S.E.2d at 108 (relying on Continental Western Ins. Co. v. Klug (Minn.1987), 415 N.W.2d 876). In applying this test, the court determined that the uninsured vehicle's use causally contributed to Howser's injuries because the vehicle played an indispensable role in the attack on Howser. The court explained:

In the case at bar, it is apparent that the unknown vehicle was an active accessory to this assault. This is not a case in which the assailant merely used the vehicle to provide transportation to the situs of the shooting. Nor is it a case where the assailant happened, incidentally, to be sitting in a stationary vehicle at the time of the attack. Only through use of his vehicle was the assailant able to closely pursue Howser, thereby enabling him to carry out the pistol assault. The gunshot was the culmination of an ongoing assault in which the vehicle played an essential and integral part. Additionally, only a motor vehicle could have provided the assailant a quick and successful escape. Thus, we find a sufficient causal connection exists between the use of the assailant's vehicle and Howser's injuries.

Howser, 422 S.E.2d at 108 (citations omitted). After finding a sufficient causal connection, the court held it must determine if an act of independent significance occurred breaking the causal link. Howser, 422 S.E.2d at 108. The Court concluded there was no act of independent significance which broke the causal link as "the unknown driver's use of his vehicle and the shooting were inextricably linked as one continuing assault." Howser, 422 S.E.2d at 109.

¶47. In Dorris, the insured was inspecting the mirror of his vehicle after it had been struck by another motorist moving in the opposite direction. The motorist turned his vehicle around and pulled up alongside the insured. An altercation ensued and the motorist pointed a pistol at the insured. The insured dove in his vehicle and sped away. Then the motorist pursued the insured and fired several shots, some of which hit the insured's vehicle. In the course of pursuit, the insured lost control of his vehicle and sustained injuries when his vehicle veered off the road and overturned. Dorris, 288 S.E.2d at 857.

¶48. In determining whether the insured's injuries "arose out of the use" of the uninsured vehicle, the Georgia Court of Appeals employed the following test:

[T]he term "arising out of" does not mean proximate cause in the strict legal sense, nor

require [sic] a finding that the injury was directly and proximately caused by the use of the vehicle, nor that the insured vehicle was exerting any physical force upon the instrumentality which was the immediate cause of the injury. . . [A]lmost any causal connection or relationship will do. . . . Case law indicates that the injury need not be the proximate result of "use" in the strict sense, but it cannot be extended to something distinctly remote. Each case turns on its precise individual facts. The question to be answered is whether the injury "originated from", "had its origin in", "grew out of", or "flowed from" the use of the vehicle. (Citations omitted.)

Dorris, 288 S.E.2d at 858 (citing Southeastern Fid. Ins. Co. v. Stevens (Ga. App. Ct. 1977), 236 S.E.2d 550 (construing the phrase "arising out of the use" in the context of personal injury protection coverage)). In applying this test, the court determined that the insured's injuries "arose from" the motorist's use of his vehicle to perpetrate an assault on the insured. The court reasoned:

Had it not been for the "use" of the unidentified truck, the continuing assault would not have happened and, presumably, appellees would not have been injured. As thus viewed, the liability of the unidentified driver for the injuries to appellees "arose from", "had its origins in", "grew out of" or "flowed from" his utilization of his vehicle as a means to perpetrate an unwarranted assault upon them. Under the evidence the crash of the [insured's] truck was the result of the high speed chase during the course of which shooting occurred. We are satisfied that where a connection appears between the "use" of the [uninsured] vehicle and the [ultimate crash of the insured's vehicle] and resulting injuries such as to render it more likely that the one grew out of the other, it comes within the coverage defined.

Dorris, 288 S.E.2d at 858-59 (citations omitted).

**¶49. State Farm argues that the tests articulated in the above cases are much too broad and effectively make UM coverage a surrogate for general crime insurance. Moreover, State Farm argues, the above tests do not accurately reflect the intent of the parties in contracting for UM coverage. *See* Ulrich v. United Services Auto. Ass'n (Wyo. 1992), 839 P.2d 942, 949. Relying on <u>Ulrich</u>, State Farm argues that the "arising out of the use" phrase "unambiguously expresse[s] the parties' intent that UM coverage exists for injuries that result as a natural consequence from the use of**

an insured vehicle." *See* Ulrich, 839 P.2d at 948. State Farm urges this Court to adopt Wyoming's "natural consequences" test, or a similar restrictive test, for determining whether an insured's injuries arose out of the use of the uninsured vehicle.

¶50. In Ulrich, a motorist, who was an acquaintance of the insured, saw the insured putting air into his tire at a gas station. The motorist pulled into the gas station and parked his truck in a manner that blocked the insured's vehicle. The motorist then began yelling and threatening the insured, attempting to pick a fight. The motorist moved his truck so that it was no longer blocking the insured's vehicle, and parked it parallel to the insured's vehicle. The motorist then pointed a gun at the insured. An exchange of gunfire ensued culminating in the motorist shooting the insured while the insured was attempting to escape in his vehicle. Ulrich, 839 P.2d at 944-45.

¶51. In holding that the insured's injuries did not arise out of the use of the motorist's truck, the Wyoming Supreme Court applied the "natural consequences" test to UM coverage. Ulrich, 839 P.2d at 948 (following Worthington v. State (Wyo. 1979), 598 P.2d 796, 807 (construing the phrase "arising out of the use" in the context of liability coverage)). The Worthington court described the natural consequences test as follows:

In determining whether an injury arose out of use, the evidence must demonstrate that it was the natural and reasonable incident or consequence of the use of an insured vehicle, the causal connection being reasonably apparent. If the injury was directly caused by some independent or intervening cause wholly disassociated from, independent of, or remote from the use of the automobile, the injury cannot be held to arise out of its use. The resolution of the question necessarily depends to a great degree upon the particular facts presented by each individual case.

Ulrich, 839 P.2d at 948. Applying this test to Ulrich, the court concluded that Ulrich's injuries did not occur as a natural consequence of the use of the motorist's truck, but rather occurred as a natural consequence of the motorist's use of a gun. Ulrich, 839 P.2d at 949. The court further commented that the motorist's intentional act of shooting was an independent, intervening cause of Ulrich's injuries, rendering the motorist's use of his truck legally insignificant. Ulrich, 839 P.2d at 949.

¶52. State Farm cites several cases from courts in other jurisdictions also applying a restrictive interpretation to "arising out of the use." *See e.g.,* Kangas v. Aetna Cas. & Sur. Co. (Mich. App. Ct. 1975), 235 N.W.2d 42, 50 (holding that where occupants left uninsured vehicle, assaulted a pedestrian, pedestrian ran into highway and was struck by a truck, no causal connection existed between pedestrian's injuries and use of the uninsured vehicle because "assaults and fisticuffs are not normal foreseeable occurrences in the use of a vehicle"); Lemmons v. Prudential Property & Cas. Ins. Co. (Mo. App. Ct. 1994), 878 S.W.2d 853, 857 (holding that for requisite causal connection to exist, the vehicle must be the instrumentality which caused the injury, not merely a contribution which causes a condition which in turn causes the injury); Doe v. State Farm Mut. Fire & Cas. Co. (E.D. Va. 1995), 878 F.Supp. 862, 864-65 (holding that injuries must be connected to the use of the car *as a car*, i.e. as a means of transportation rather than a situs for the commission of criminal acts).

¶53. In advocating their respective tests, neither party explicitly addressed the issue of whether the phrase "arising out of the use" is ambiguous. State Farm briefly touched on the issue by quoting Ulrich which states that the "arising out of the use" phrase "unambiguously expresse[s] the parties' intent that UM coverage exists for injuries that result as a natural consequence from the use of an uninsured vehicle." *See* Ulrich, 839 P.2d at 949. As previously stated, an ambiguity exists when the contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations. Holeman, ¶ 25. We examine the question of ambiguity in insurance contract language from the viewpoint of a consumer with average intelligence but not trained in the law or insurance business. Holeman, ¶ 25. Upon these principles, we determine that the phrase "arising out of the use" is ambiguous because it is reasonably subject to more than one interpretation. In cases where the uninsured vehicle is the instrumentality and, therefore, the legal cause of the insured's injuries, we are certain the average UM policyholder would think that his or her injuries arose out of the use of the uninsured vehicle. However, we cannot agree with State Farm that the average UM policyholder would not think his or her injuries arose out of the use of the uninsured vehicle in cases where the uninsured vehicle is not the instrumentality causing the injuries, but is a prime accessory, without which the injury-producing incident or the severity of the injuries would not have occurred. Indeed, we think the opposite.

¶54. Having concluded that the phrase "arising out of the use" is ambiguous, we resolve the ambiguity in favor of the insured. Holeman, ¶ 25. We align ourselves with

those jurisdictions adopting an expansive, rather than restrictive, interpretation of the phrase. Specifically, we adopt the fact-intensive test articulated in Dorris. We hold that for purposes of UM coverage, an insured's injuries "arise out of the use" of an uninsured vehicle if the injuries originate from, or grow out of, or flow from the use of the uninsured vehicle. Dorris, 288 S.E.2d at 858. We agree with Olivier, that the phrase "arising out of the use" should be broadly interpreted to effect the remedial purposes of UM coverage. Olivier, 374 A.2d at 1242.

¶55. We are cognizant of State Farm's slippery slope argument and its concern that applying an expansive interpretation to the phrase "arising out of the use" would expand UM coverage to the extent it would function as general crime insurance. However, rather than address this concern by fashioning an unduly restrictive test of causal relationship, as State Farm suggests, we think it better to apply an expansive test and, on a case by case basis, distinguish those cases where the facts suggest a remote or tenuous causal relationship between an insured's injuries and the use of the uninsured vehicle from cases where the facts demonstrate that the two are inextricably linked.

¶56. Moreover, it appears State Farm recognizes that the Dorris test is workable in the context of UM coverage. We note that in analogizing this case to other cases with similar facts where it was held that no causal relationship existed, State Farm cited Cannon v. Maine Bonding & Cas. Co. (N.H. 1994), 639 A.2d 270, a case employing the same expansive test as in Dorris. In Cannon, a motorist engaged the insured in a game of "cat and mouse" on the Interstate and would not let the insured pass. The motorist used "hostile hand signals" to indicate that he wanted the insured to pull over. The insured refused and drove closely behind the motorist to ascertain his license plate number. The motorist then slammed his brakes. The insured in turn slammed his brakes causing his vehicle to stall. The two vehicles came to a stop without touching each other. The motorist then exited his vehicle, ran over to the insured's vehicle, smashed the insured's driver side window with his fist, and punched the insured in the face. Cannon, 639 A.2d at 271.

¶57. In resolving the "arising out of the use" question, the court employed the "originating from, or growing out of, or flowing from the use" test of causal relationship. Cannon, 639 A.2d at 271. Applying this test, the court reasoned that "the causal connection between use and injury here is tenuous," and held that the insured's injuries did not arise out of the use of the uninsured vehicle. Cannon, 639

A.2d at 271. *See also* Akerley v. Hartford Ins. Group (N.H. 1992), 616 A.2d 511, 515-16 (employing same expansive test as <u>Dorris</u> and holding no causal relationship existed). The <u>Cannon</u> and <u>Akerley</u> cases demonstrate that the "originating from, or growing out of, or flowing from the use" test is workable in the context of UM coverage without expanding the scope of UM coverage so as to make it a surrogate for general crime insurance.

¶58. Having decided the proper test to be applied in determining whether an insured's injuries arose out of the use of an uninsured vehicle, we recognize that a material issue of fact is disputed in this litigation: whether Appellant's injuries originated from, or grew out of, or flowed from the use of Morehead's vehicle. Because a material issue of fact exists in this case, we hold that the District Court's grant of summary judgment was improper.

¶59. We reverse and remand this cause to the District Court for further proceedings consistent with this opinion.


/S/ WILLIAM E. HUNT, SR.


We Concur:


/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

/S/ JIM REGNIER

Justice Karla M. Gray specially concurring in part and dissenting in part.

¶60 I specially concur in the portion of the Court's opinion which discusses and resolves the issue relating to the definition of "accident." I dissent, however, from much of the Court's discussion--and from its resolution--of the issue relating to "arising out of the use of." Consequently, I cannot join in the overall result of the Court's opinion and I would affirm the District Court.

¶61 With regard to the Court's discussion of the definition of "accident," I do not agree with all that is said therein. I do agree, however, that absent a statutory or policy definition, the term "accident" is ambiguous. Thus, under our precedent, the ambiguity must be resolved in favor of the insured.

¶62 With regard to the Court's discussion of "arising out of the use of," I agree that the phrase is ambiguous and that our cases requiring us to resolve ambiguities in insurance policies in favor of the insured are applicable. This does not mean, however, that the most expansive available approach is necessarily appropriate or proper and, indeed, the Court observes that the Appellant does not advocate a particular test.

¶63 Like the Court, I would not adopt any test under which the uninsured vehicle must be the actual instrumentality of an insured's injuries. Such a test is too restrictive. Where a fight or shooting occurs subsequent to--and arises out of--an actual "bump" or collision by an uninsured vehicle, or a shooting occurs from within an uninsured vehicle, I agree that there is a sufficient nexus between the use of the uninsured vehicle and the insured's injuries to require UM coverage.

¶64 In cases such as the one presently before us, however, where no "bump" or collision or assault from within the uninsured vehicle has occurred, it is my view that the nexus between use of the uninsured vehicle and the insured's injuries is too attenuated. The tortfeasor in this case did not own--and was not driving--the uninsured vehicle. He was a passenger who exited from the vehicle and committed an assault on the insured. I cannot agree that these circumstances are sufficient to impose a requirement that UM coverage be provided.

¶65 I would affirm the District Court's grant of summary judgment to State Farm.

/S/ KARLA M. GRAY

No

Chief Justice J. A. Turnage joins in the foregoing concurring and dissenting opinion of Justice Karla M. Gray.

/S/ J. A. TURNAGE