DA 07-0436

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 212

LAMBERT WELL SERVICE, INC.,

      Plaintiff and Appellant,

    v.

WELLINGTON SPECIALTY
INSURANCE COMPANY,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Seventh Judicial District,
In and For the County of Richland, Cause No. DV 06-98
Honorable Richard A. Simonton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Gene R. Jarussi; Jarussi & Bishop, Billings, Montana

      For Appellee:

        Chris Mangen, Jr.; Bryan Wilson; Crowley, Haughey, Hanson, Toole &
Dietrich; Billings, Montana

                Submitted on Briefs:  March 5, 2008

                    Decided:  June 17, 2008

Filed:

_____

             Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Appellant Lambert Well Service, Inc. (Lambert) appeals the order of the Seventh Judicial District Court, Richland County, denying Lambert's motion for summary judgment and granting summary judgment to Appellee Wellington Specialty Insurance Co. (Wellington).  We affirm.

¶2    The sole issue on appeal is whether the District Court erred by concluding Lambert's claim was not covered under the Wellington insurance policy.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3    Lambert is an oil well service company.  In September 2006, while removing and reinstalling the rods and tubing of a well in Dawson County, Montana, Lambert's employees dropped a piece of new tubing they were installing, causing approximately $30,000.00 of damage to the tubing and tubing anchor.  The tubing did not belong to Lambert, but rather was provided by Ritter Laber & Associates and was already at the job site when Lambert arrived.  Lambert's subsequent investigation revealed that the tubing was dropped because the elevators either failed to latch or failed to stay latched.  There was no indication that Lambert's employees had done anything wrong.  Lambert reported the loss to its insurer, Wellington, which investigated the accident and denied coverage.  Wellington concluded that "at the time of the incident the involved piping was in your care, custody and control," and that such an occurrence was not covered by Lambert's Commercial General Liability policy.

2

¶4   The Wellington policy provided that Wellington would "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." There is no dispute that Lambert was an "insured" and that the damage to the tubing constituted "property damage." However, the Wellington policy expressly excluded coverage for "'[p]roperty damage' to . . . [p]ersonal property in the care, custody, and control of the insured." Wellington concluded the damaged tubing fell within this exclusion to coverage. The District Court agreed, denying Lambert's motion for summary judgment and granting Wellington's cross-motion for summary judgment. Lambert appeals.

**STANDARD OF REVIEW**

¶5   We review a district court's grant or denial of a motion for summary judgment de novo. *Blair v. Mid-Continent Cas. Co.*, 2007 MT 208, ¶ 14, 339 Mont. 8, ¶ 14, 167 P.3d 888, ¶ 14 (citation omitted). We apply the same criteria applied by the district court pursuant to M. R. Civ. P. 56(c). *Blair*, ¶ 14. The moving party must establish both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Blair*, ¶ 14.

¶6   The issue currently before the Court is whether, under the terms of the Wellington policy, Wellington was entitled to judgment as a matter of law. The interpretation of an insurance policy presents a question of law. *Wendell v. State Farm Mutual Ins. Co.*, 1999 MT 17, ¶ 10, 293 Mont. 140, ¶ 10, 974 P.2d 623, ¶ 10. Therefore, we determine whether

3

the District Court correctly interpreted the provisions of the Wellington policy. *Wendell*, ¶ 10.

**DISCUSSION**

**¶7 Did the District Court err by concluding Lambert's claim was not covered under the Wellington insurance policy?**

¶8 Both parties acknowledge that the Wellington policy provides an exclusion which applies and excludes the damaged tubing from coverage. The policy provides that coverage is inapplicable for "'[p]roperty damage' to . . . [p]ersonal property in the care, custody, and control of the insured." The tubing involved was personal property in the care, custody, and control of Lambert's employees, and thus this provision, if we went no further, would exclude coverage.

¶9 However, Lambert argues that another provision in the Wellington policy essentially cancels out this exclusion. This argument is premised on the policy's definition of "who is an insured," which states that "employees" are insureds "only for acts within the scope of their employment by [Lambert] or while performing duties related to the conduct of [Lambert's] business." However, the policy further states that "none of these employees . . . are insureds for . . . [p]roperty damage to property . . . in the care, custody, or control of . . . [Lambert], [or] any of [Lambert's] 'employees.'" In other words, this section provides that employees are not considered insured for purposes of property damage that occurs to property in their care, custody, or control. Lambert argues that this section, when read in combination with the initial exclusion of coverage, essentially amounts to a double negative resulting in coverage, not excluding it.

4

According to Lambert, "it becomes obvious that since the damaged tubing in this case was in the care, custody or control of Lambert employees, and since those employees are not considered 'insureds' for purposes of Lambert's claim, the exclusionary language does <u>not</u> apply . . . ."

¶10 The District Court concluded that the exclusion for care, custody, and control of personal property applied because "the Plaintiff can operate only through its employees and the only logical interpretation of the policy is to impute the care, custody, or control by the employees as the care, custody, and control of the insured corporation." Lambert argues the District Court erred by applying this commonly accepted principle of contract and tort law to interpret the Wellington policy as excluding coverage. Wellington responds that the exclusion of "employees" from the definition of "insureds" with respect to property damage in their care, custody, or control is simply a second exclusion of coverage for damage to personal property: one exclusion is located under the coverage portion of the policy, and the other exclusion is in the definition of "insureds." According to Wellington, Lambert's attempt to read the "who is an insured" section as canceling out the coverage exclusion is "convoluted doubletalk."

¶11 "We construe an insurance policy 'according to the entirety of its terms and conditions as set forth in the policy,'" meaning that "we will read the contract as a whole and attempt to reconcile its parts to give each meaning and effect." *Lammers v. Moun*, 2008 MT 47, ¶ 11, 341 Mont. 406, ¶ 11, 177 P.3d 1026, ¶ 11 (citations omitted). We would infringe on this reconciliation principle if we interpreted the policy to first exclude

5

coverage for personal property damage caused by Lambert's employees, then to renew such coverage by excluding from the definition of "insureds" those employees who caused such property damage. While the Wellington policy is not a model of clarity, we agree with Wellington and the District Court that because Lambert is a corporation, it can only act through its employees, and the policy certainly intended to exclude from coverage all personal property damage caused by Lambert—the "insured"—through its employees. Lambert argues that as a "fictional" corporate entity, Lambert alone could not be "physically" in the care, custody, and control of the tubing or cause property damage because it was not "present." However, without addressing the notion of "fictional entities," the tubing was clearly in Lambert's "care, custody, and control" because Lambert's employees were physically present and working with the tubing when it was dropped and damaged. The tubing was being installed by Lambert's employees while acting "within the scope of their employment," and thus, it was also in Lambert's "care, custody, and control."

¶12    Lambert was not covered by the Wellington policy for damage to personal property in its care. Under the coverage exclusion, the policy expressly excluded from coverage "'[p]roperty damage' to . . . [p]ersonal property in the care, custody, and control of [Lambert]." Under the definition of "who is an insured," the policy again expressly excluded "[p]roperty damage to property . . . in the care, custody, or control of . . . [Lambert], [or] any of [Lambert's] 'employees.'" The second section does not cancel out

6

the first, but merely supplements it. Under either exclusion, Lambert was not covered for the damage to the tubing.

¶13   Affirmed.

/S/ JIM RICE

We concur:

/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER