No. 12541

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

EDNA M. LENTZ, ADMINISTRATRIX
OF THE ESTATE OF KARL O. LENTZ, Deceased,
and EDNA M. LENTZ,

                Plaintiffs and Respondents,

-vs-

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA,

                Defendant and Appellant.

---

Appeal from:  District Court of the Sixteenth Judicial District,
               Honorable Alfred B. Coate, Judge presiding.

Counsel of Record:

    For Appellant:

        Gene Huntley argued, Baker, Montana

    For Respondent:

        Denzil R. Young argued, Baker, Montana

---

                    Submitted:  February 25, 1974

                      Decided:  APR -3 1974

Filed:  APR -3 1974

*Thomas J. Kearney*
                    Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an action by plaintiff, Edna M. Lentz, wife and administratrix of the estate of Karl O. Lentz, seeking recovery on a credit life insurance policy. The district court of Fallon County, sitting without a jury, entered findings of fact, conclusions of law and judgment in favor of plaintiff. From this judgment defendant, the Prudential Insurance Company of America, appeals.

On July 1, 1967, Karl O. Lentz, deceased, of Baker, Montana, purchased an automobile from Ryan Oldsmobile in Billings, Montana. The purchase was by installment contract. As part of the contract Lentz purchased credit life insurance from the defendant. As a condition of coverage, Lentz was required to declare "that to the best of my knowledge and belief I am now in good health". The premium was paid on the contract of insurance. Lentz died on August 16, 1967.

At the time of the purchase Lentz was 73 years old. Lentz experienced various medical problems. By stipulation, reports of Dr. John Hurly of Billings, Montana, were admitted into evidence in the trial. These reports show that in September - October and December of 1966, Lentz was treated by Dr. Hurly for ulcers. Surgery was declined on both occasions because of poor renal (kidney) function. The reports indicate that Lentz was quite comfortable on medication and that his blood pressure was quite satisfactory at that time and that " * * * He (Lentz) was aware because of the deferment of surgery on two occasions that his health was not good at these times. Nonetheless there was no immediate threat of death once the bleeding ulcer was recognized and treated."

Dr. Robert Weeks, Baker, Montana, testified that he saw Lentz on May 16, 1967, and prescribed some medicine to lower Lentz's blood pressure. Dr. Weeks, considering Lentz as being in serious

- 2 -

condition of health, was asked if he told Lentz the seriousness of his condition. He answered:

> "No, on the contrary he acted so frightened that I reassured the man rather than discussing anything about the shortness of life or a short life span. I considered this a necessary part of the treatment because being scared elevates the blood pressure and basically this was his problem, it produced the anurism (sic)."

Dr. Weeks stated that he tried to remain optimistic as to reassure Lentz and testified:

> "Reassuring him that he would wake up in the morning, that type of thing, you know, he was really quite frightened, on several visits. On this visit, 5-16-67, I think it was the one he was most frightened on."

Dr. Weeks hospitalized Lentz on May 20, 1967, for his high blood pressure, back pains, abdominal aneurism and because "his kidneys weren't doing their full work." He was discharged from the hospital on May 24, 1967, and on May 29, 1967, Lentz was again hospitalized for back pains. He was released on June 4, 1967. Dr. Weeks saw Lentz again on June 7, 1967, and in reference to this visit stated:

> "On that occasion his blood pressure was 130 over 90, which is a small miracle. The poison that his kidney was supposed to filter out had improved so he was in better shape than at any time since I started seeing him on 5-16-67, so he was less axotemic on that day".

Dr. Weeks testified that he had shown Lentz numbers and figures to indicate to him that he was improving and that he had probably said something to Lentz to the effect "that this is the best he has ever been." Dr. Weeks saw Lentz again on June 16, 1967, when his blood pressure was up and again on July 3, 1967, when Lentz's blood pressure was quite high. Dr. Weeks testified that he "continued to assume a reassuring manner at all times" with Lentz. Lentz was seen several times thereafter by Dr. Weeks, up to the time of his death on August 16, 1967. Death was attributed to an abdominal aortic aneurism.

Plaintiff testified that her husband was not feeling good in the spring of 1967, that he had gas on the stomach and that he had to quit smoking. Plaintiff, however, stated that her husband was in good health and seemed to be 10 or 15 years younger than he actually was and that they had planned to go to California to be with their son's children. Lentz bought the new car for the trip and purchased new clothing as well. In response to being asked about Mr. Lentz's spirits at the time of the purchase of the car, plaintiff answered, "He felt real good, because of his terrific health he was real happy."

Defendant presents four issues for our determination. Two of the issues, which we shall consolidate and consider initially, concern a question of agency and the district court's findings with respect to representations made by the salesman at Ryan Oldsmobile to deceased. Defendant's remaining issues are summarized as follows:

(1) Whether there was a misrepresentation as to a material fact under section 40-3713, R.C.M. 1947; (2) whether the life insurance policy was rescinded.

The district court in its findings of fact found that " * * * the salesman at Ryan Oldsmobile advised deceased that it would be necessary to purchase a Creditors Life Insurance Policy from the defendant." The district court also found:

> " * * * as deceased did not desire to purchase
> said insurance but was advised by the automobile
> seller's agent that such insurance would have to
> be purchased."

Defendant argues that there is no basis in the evidence for the district court to have made such findings. While from our review of the transcript we find no evidence that it was a necessity that deceased purchase the insurance, we clearly find in the testimony by the plaintiff evidence that the salesman at Ryan Oldsmobile requested and suggested that deceased take the insurance. The

salesman indicated to deceased that purchasing the insurance was customary and something which was always done on a contract. Deceased then purchased the insurance.

In addition, the district court found "That the automobile seller's agent was not an agent of the deceased, but was defendant's agent." Defendant states no objection to this finding except that it was not necessary and confusing.

It is this Court's view that all of the above-quoted findings of the district court were proper, necessary and supported by the evidence. The salesman was certainly the agent of defendant, and the evidence shows that the salesman urged deceased to enter into the contract. We do note, however, that because of the foregoing issues defendant was not in any way estopped from contending that there was a misrepresentation made by the deceased.

As to the next question presented, defendant specifically takes issue with the district court's finding No. VIII, which states:

> "That deceased's representation of good health, although untrue in fact, was made in good faith without any intent to mislead the defendant or to induce the defendant to issue the insurance policy, as deceased did not desire to purchase said insurance but was advised by the automobile seller's agent that such insurance would have to be purchased."

Section 40-3713, R.C.M. 1947, provides:

> "All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:
>
> "(a) Fraudulent; or
>
> "(b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
>
> "(c) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract in as large an amount, or at the same premium or rate, or would

not have provided coverage with respect to
the hazard resulting in the loss, if the true
facts had been made known to the insurer as re-
quired either by the application for the policy
or contract or otherwise."

Defendant argues that section 40-3713 prevents a recovery if a material misrepresentation is made whether or not the misrepresentation is innocently made. Defendant's argument is based upon the premise that deceased represented a fact that he was in good health, and because in fact, deceased was not in good health, that this constitutes a material misrepresentation preventing recovery. Deceased declared "that to the best of my knowledge and belief I am now in good health." The actual representation was that deceased believed himself to be in good health, and the district court found that this was in good faith.

Although the facts in this case show that deceased was not in good health, the facts also show that deceased believed that his health was good.

Defendant also contends that there is not sufficient evidence for the district court to have ruled that deceased, in good faith, thought that he was in good health.

The testimony of Dr. Weeks indicates that deceased was continually reassured that his health was improving and that deceased was encouraged as to the condition of his health. In addition, the testimony of plaintiff supports the fact that deceased believed himself to be in good health at the time of the purchase of the automobile and the execution of the contract and credit life insurance policy. Deceased represented that he believed himself to be in good health, and the evidence sufficiently supports his belief.

In Couch on Insurance 2d Section 35:150, it is stated:

" * * * Accordingly, where the applicant for life
insurance certifies that his health is good according

- 6 -

to the best of his knowledge and belief, a recovery
may be had, on the death of insured, if it appears
that he had reason to believe and did believe, that
at the time he was in good health, although it
subsequently develops that this was not in fact
his condition, for his statement was not unqualified,
but only to the extent of his knowledge and belief. * * *"

As to the final issue presented, defendant contends that
when the full amount of the premium is tendered back to the estate
of the deceased and the money is kept that this results in a re-
scission of the policy. The district court found:

"That defendant has refused to pay the insurance
benefits provided for by the policy and has treated
the policy as rescinded and has returned the amount
of the premium to the deceased's estate."

In order for there to be a rescission of the insurance
policy the requirements of both section 40-3713, supra, and section
13-905, R.C.M. 1947, must be met. McLane v. Farmers Ins. Exchange,
150 Mont. 116, 118, 432 P.2d 98.

The district court in its conclusions of law cited McLane
for the proposition that defendant could not rescind the insurance
policy after liability had attached. Upon examining our decision
in McLane we note that what we held therein was that even after
the accident, the insurance company " * * * had a right to a reason-
able time in which to investigate (citing authority) and upon dis-
covering the facts entitling him to rescind he was required to
act promptly to rescind." The insurance company in McLane waived
its right to rescind by affirmative acts on its part and by not
meeting the requirement that he promptly rescind.

We point out that the district court's conclusion is not
an absolute rule. While it is this Court's purpose to make this
clarification, we nevertheless hold that in the instant case there
has been no rescission.

In support of his argument defendant cites 43 Am Jur 2d,
Insurance, § 436, which states:

"The fact that after the death of the insured a

- 7 -

suit in equity may not lie to rescind the insurance contract does not prevent the parties from rescinding by consent. After the death of the insured, the beneficiaries of a life insurance contract are the proper parties to give consent to and agree upon a rescission of the contract, and they are likewise the proper parties to accept premiums returned upon such a rescission.

"Accordingly, a rescission by consent of the parties has been held to be completed as a matter of law where the beneficiary in an insurance policy the reinstatement of which was obtained by the alleged fraud of the insured, after the death of the insured, accepted and for a month retained the premiums which were returned by the insurer on the ground of the alleged fraudulent misrepresentations by the insured of facts material to the risks.

"Moreover, the effect, as a rescission of a life insurance policy by consent, of an acceptance by the beneficiary after the death of the insured, of a check for the amount of premiums paid, with interest thereon, tendered by an insurer claiming the policy to be voidable by reason of misrepresentations by the insured, is not altered by the fact that he has been wrongly advised by a third person that he may accept the check without losing any right against the insurer."

In view of our discussion of defendant's preceding issue and statutes which have been cited herein, the only means by which a rescission could have been effected in this case was by the consent of the parties. Although the district court's finding states that defendant treated the policy as rescinded and returned the premium to the deceased's estate, this Court fails to see where there is any evidence in the record showing the requisite consent to rescind.

There are statements made by counsel in the transcript of the trial as to what happened to the premium, and the briefs on appeal are replete with statements by counsel as to what happened to the premium. There is a letter attached to plaintiff's brief, but which was not admitted into evidence. There is, however, no proof in the record that there was consent by the plaintiff as administratrix of the deceased's estate or as owner of the automobile to rescind the policy. Therefore, defendant's final issue is without merit.

- 8 -

For the foregoing reasons, the judgment of the district court is hereby affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 9 -