No. 02-608

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 273

BARBARA WILLIAMS,

   Plaintiff and Appellant,

  v.

UNION FIDELITY LIFE INSURANCE COMPANY,

   Defendant, Respondent and Cross-Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,
       In and for the County of Yellowstone, Cause No. DV 99-501
       The Honorable Russell C. Fagg, Judge presiding.

COUNSEL OF RECORD:

   For Appellant:

     L. Randall Bishop, Jarussi & Bishop, Billings, Montana

   For Respondent:

     W. Anderson Forsythe, Nancy Bennett, Moulton, Bellingham, Longo &
     Mather, P.C., Billings, Montana

   For Amicus Curiae:

     John Morrison, Montana State Auditor, Karen Powell, Special Assistant
     Attorney General, Helena, Montana

           Submitted on Briefs: March 20, 2003

           Decided: November 1, 2005

Filed:

_____
         Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1      Barbara Williams (Barbara) appeals a jury verdict in the District Court for the Thirteenth Judicial District, Yellowstone County, finding that Union Fidelity Life Insurance Company (Union Fidelity) did not breach its contract with Barbara and her husband, Clarence Williams (Clarence). Barbara also appeals the District Court's denial of her motions for summary judgment and for judgment as a matter of law.[1] Union Fidelity cross-appeals. We affirm in part, reverse in part and remand for further proceedings consistent with this Opinion.

¶2      For purposes of clarity, we have separated the two issues Barbara raised on appeal into the following three issues:

¶3      1. Whether the District Court erred in denying Barbara's motions for summary judgment and for judgment as a matter of law upon her claim that Union Fidelity breached

---

[1] Throughout their briefs, the parties use the terms "directed verdict" and "judgment as a matter of law" interchangeably. However, in March 1993, this Court amended Rule 50(a), M.R.Civ.P., to refer to the particular motion provided by that Rule as a "Motion for Judgment as a Matter of Law" rather than a "Motion for a Directed Verdict." This change followed the 1991 amendment to the federal rule. The Advisory Committee Notes to the 1991 amendment to Rule 50, Fed.R.Civ.P., state that the rule was amended because the term "directed verdict" is "misleading as a description of the relationship between judge and jury." The Advisory Committee Notes also state that "[i]f a motion is denominated a motion for directed verdict . . . the party's error is merely formal. Such a motion should be treated as a motion for judgment as a matter of law. . . ." Hence, we will refer to such motions throughout this Opinion as "Motions for Judgment as a Matter of Law" even though the parties may have termed them otherwise.

its insuring agreement by rejecting her claim for benefits and rescinding her Certificate of Insurance.

¶4    2.   Whether the District Court erred in admitting into evidence at trial Clarence's medical records acquired by Union Fidelity after Barbara's claim had been denied and her certificate of insurance rescinded.

¶5    3.   Whether the District Court erred in instructing the jury that Clarence's opinion as to the condition of his health was to be determined under both subjective and objective tests.

¶6    In addition, Union Fidelity raised the following three issues on cross-appeal:

¶7    4.   Whether the District Court erred by denying Union Fidelity's motions for summary judgment and for judgment as a matter of law on Barbara's claims of fraud and bad faith.

¶8    5.   Whether the District Court erred by granting Barbara's motion *in limine* precluding Union Fidelity from presenting evidence about Barbara's and Clarence's bankruptcy.

¶9    6.   Whether the District Court erred by failing to give Union Fidelity's instruction setting forth its defense theory.

## FACTUAL AND PROCEDURAL BACKGROUND

¶10   On December 7, 1996, Barbara and Clarence purchased a new pickup from Archie Cochrane Motors in Billings.  As part of the deal, Barbara and Clarence purchased credit life insurance.  The application for credit life coverage was incorporated into the Certificate of Insurance sold by Archie Cochrane Motors on behalf of Union Fidelity.  It provided as follows:

3

I hereby certify that I am in good health and am not under treatment for, or receiving medical advice for any illness, disease, or physical or mental impairment. In addition, I have not been diagnosed as having Acquired Immune Deficiency Syndrome (AIDS), AIDS Related Complex, or tested positive for antibodies to the AIDS virus. . . .

. . . .

I make the above certifications with the intent of inducing Union Fidelity Life Insurance Company to issue this certificate of insurance. I understand that: . . . (b) any untruthful answer or misrepresentation may be a basis for a denial of benefits or the voiding of this certificate of insurance.

¶11    While the application does not define "good health," Union Fidelity's Credit Insurance Manual states:

Quite often, the question, "WHAT IS GOOD HEALTH?" is asked of the home office. Although opinions vary slightly, it is generally agreed that a person in good health is:
• Free from serious disease that could be expected to cause health problems in the foreseeable future.
• Able to perform the usual activities of a person of like age and build.
• Capable of working at least 30 hours per week.

There is no place on Union Fidelity's form to include detailed medical information. In addition, no additional forms, health questions, medical examinations, medical tests, medical screenings or authorizations for release of medical information are part of the application process. Once the Certificate of Insurance is signed by the applicant, credit life insurance coverage is issued, on the spot, by the dealership. Both Clarence and Barbara signed the application on December 7, 1996.

¶12    Clarence died on September 20, 1997, and Barbara submitted a claim for death benefits to Union Fidelity totaling $34,000. The file was assigned to a claims analyst who requested copies of Clarence's past medical records. The death certificate had identified, as

4

an underlying cause of death, "renal cell carcinoma with metastasis" which had existed for "years." On December 16, 1997, Union Fidelity denied the claim for benefits and rescinded the Certificate of Insurance on the basis that Clarence had misrepresented his health.

¶13 On June 21, 1999, Barbara filed a civil action against Union Fidelity and Archie Cochrane Motors, as an agent of Union Fidelity, alleging breach of contract; fraud; breach of the implied covenant of good faith and fair dealing; and breach of Union Fidelity's statutory obligations under the Montana Insurance Code and the Montana Unfair Claim Settlement Practices Act, § 33-18-201, MCA. The parties subsequently stipulated to dismiss Archie Cochrane Motors from this action with prejudice and the court so ordered.

¶14 Upon completion of discovery, Union Fidelity moved for summary judgment on the grounds that Clarence provided false information that was material to Union Fidelity's decision to issue the insurance certificate, hence Union Fidelity rescinded the certificate. Union Fidelity argued that because it rescinded, there is no insurance contract and all of Barbara's claims against Union Fidelity fail as a matter of law. Thereafter, Barbara filed a Cross Motion for Partial Summary Judgment on her breach of contract claim. Barbara also alleged that Union Fidelity engaged in postclaim underwriting, an unfair trade practice prohibited by § 33-18-215, MCA.

¶15 After a hearing, the District Court denied Union Fidelity's Motion for Summary Judgment as well as Barbara's Cross Motion for Partial Summary Judgment. The court determined that there were several genuine issues of material fact, including whether

Clarence's signature on the credit application signifying that he was in good health was a material misrepresentation.

¶16 The parties proceeded to trial on May 20, 2002. At the close of the evidence, Barbara moved for judgment as a matter of law in her favor on her breach of contract claim and Union Fidelity moved for judgment as a matter of law in its favor on Barbara's fraud and bad faith claims. The District Court denied both motions and submitted the case to the jury. The jury's verdict form instructed it to first determine whether Union Fidelity breached its contract with Barbara; if the jury found no breach, it was to sign and return the verdict form without reaching Barbara's other claims. The jury returned a verdict in favor of Union Fidelity on the breach of contract claim. Barbara now appeals and Union Fidelity cross-appeals.

**Issue 1.**

¶17 *Whether the District Court erred in denying Barbara's motions for summary judgment and for judgment as a matter of law upon her claim that Union Fidelity breached its insuring agreement by rejecting her claim for benefits and rescinding her Certificate of Insurance.*

¶18 Our standard of review in appeals from summary judgment rulings is *de novo*. *Wendell v. State Farm Mut. Auto Ins. Co.*, 1999 MT 17, ¶ 9, 293 Mont. 140, ¶ 9, 974 P.2d 623, ¶ 9 (citing *Ruckdaschel v. State Farm Mut. Auto Ins.* (1997), 285 Mont. 395, 398, 948 P.2d 700, 702). We apply the same criteria applied by the district court pursuant to Rule 56(c), M.R.Civ.P. The moving party must establish both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. Once the moving party has met

6

its burden, the opposing party must present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact. *Hanson v. Water Ski Mania Estates*, 2005 MT 47, ¶ 11, 326 Mont. 154, ¶ 11, 108 P.3d 481, ¶ 11 (citing *Fair Play Missoula v. City of Missoula*, 2002 MT 179, ¶ 12, 311 Mont. 22, ¶ 12, 52 P.3d 926, ¶ 12; *Enger v. City of Missoula*, 2001 MT 142, ¶ 10, 306 Mont. 28, ¶ 10, 29 P.3d 514, ¶ 10).

¶19 This Court's standard of review of appeals from district court orders granting or denying motions for judgment as a matter of law is identical to that of the district court. *Marie Deonier & Assoc. v. Paul Revere Life Ins. Co.*, 2004 MT 297, ¶ 18, 323 Mont. 387, ¶ 18, 101 P.3d 742, ¶ 18 (citing *Durden v. Hydro Flame Corp.*, 1998 MT 47, ¶ 22, 288 Mont. 1, ¶ 22, 955 P.2d 160, ¶ 22; *Ryan v. City of Bozeman* (1996), 279 Mont. 507, 510, 928 P.2d 228, 229-30). Judgment as a matter of law is properly granted only when there is a complete absence of any evidence which would justify submitting an issue to a jury and all such evidence and any legitimate inferences that might be drawn from that evidence must be considered in the light most favorable to the party opposing the motion. *Marie Deonier*, ¶ 18 (citing *Bevacqua v. Union Pac. R.R. Co.*, 1998 MT 120, ¶ 46, 289 Mont. 36, ¶ 46, 960 P.2d 273, ¶ 46; *Durden*, ¶ 21).

¶20 Barbara argues on appeal that the District Court erred in failing to hold Union Fidelity liable as a matter of law on her breach of contract claim because Union Fidelity engaged in postclaim underwriting which is statutorily prohibited as an unfair trade practice in Montana. Barbara maintains that during the application process, an insurer must require fact-specific

information regarding the applicant's medical history that the insurer considers to be material and absent such rudimentary "underwriting," a material misrepresentation cannot occur as a matter of law. Barbara points out that Union Fidelity's application form did not require any fact-specific information regarding past medical history.

¶21 Union Fidelity argues that postclaim underwriting is not an independent claim in Montana and that even if Barbara could assert an independent postclaim underwriting claim, § 33-18-215, MCA, does not support her argument that she was entitled to judgment as a matter of law based solely on Union Fidelity's application form. Union Fidelity maintains that because Clarence made a material representation on the application form, Union Fidelity was entitled to rescind the policy.

¶22 In 1997, the Montana Legislature amended Montana's Unfair Trade Practices Act (UTPA) and expressly prohibited postclaim underwriting.

> **Postclaim underwriting prohibited -- condition**. An insurer, health service corporation, or health maintenance organization may not place an elimination rider on or rescind coverage provided by a disability policy, certificate, or subscriber contract after a policy, certificate, or contract has been issued unless the insured has made *a material misrepresentation or fraudulent misstatement* on the application or has failed to pay the premium when due.

Section 33-18-215, MCA (emphasis added).

¶23 Moreover, § 33-15-403, MCA, allows an insurer to deny coverage when an applicant fails to provide truthful and accurate information:

> **Representations in applications -- recovery precluded if fraudulent or material.** (1) All statements and descriptions in any application for an insurance policy or annuity contract or in negotiations for an insurance policy

8

or annuity contract by or on behalf of the insured or annuitant are considered representations and not warranties.

(2) Misrepresentations, omissions, concealment of facts, and incorrect statements do not prevent a recovery under the policy or contract unless:

(a) *fraudulent*;

(b) *material either to the acceptance of the risk or to the hazard assumed by the insurer*; or

(c) the insurer in good faith would either not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the same premium or rate or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise. [Emphasis added.]

¶24 In this case, Barbara contends that Union Fidelity's application was ambiguous because it did not define "good health," nor did it require information on past medical treatment. Union Fidelity argues that credit life insurance applications typically don't require as much information as other types of insurance. Moreover, Union Fidelity contends that its rates and contract terms are regulated and any ruling that Barbara was entitled to judgment as a matter of law based solely on Union Fidelity's application form would violate the "filed rate doctrine."

¶25 The filed rate doctrine arose from a concern that a deviation from a rate filed with a federal regulatory agency can result in the imposition of civil or criminal sanctions by a court of law without sufficient knowledge or expertise of the rate-setting process of a regulatory agency. The purpose of the filed rate doctrine is to ensure that rates are both reasonable and evenly applied. It initially applied to common carriers, but was expanded to include telephone services, utilities and insurance.

9

¶26 The filed rate doctrine originated in *Keogh v. Chicago & N.W. RY. Co.* (1922), 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183, wherein the United States Supreme Court held that a private shipper could not recover treble damages against railway companies that had set rates that were filed with and approved by the Interstate Commerce Commission (ICC). The Supreme Court set forth two rationales for its holding. First, the regulatory scheme already allowed for the recovery of damages for illegal rates in proceedings before the ICC and, second, carrier rate regulation was primarily intended to prevent the charging of discriminatory rates. "Where damages are sought under a state law, [the filed rate doctrine] may apply if the challenged rates or prices were set by a *federal regulatory authority. See, e.g., Knevelbaard Dairies v. Kraft Foods Inc.* (9th Cir. 2000), 232 F.3d 979, 992 (emphasis added) (citations omitted). Furthermore, the filed rate doctrine bars both state and federal claims that attempt to challenge a *rate* that a *federal agency* has reviewed and filed. *County of Stanislaus v. Pacific Gas & Elec. Co.* (9th Cir. 1997), 114 F.3d 858, 866 (emphasis added), *cert. denied*, 522 U.S. 1076, 118 S.Ct. 854, 139 L.Ed.2d 754 (1998).

¶27 In an amicus brief filed in the case *sub judice*, the Office of the Montana State Auditor acting as Commissioner of Insurance for the State of Montana (the Commissioner), argued that the filed rate doctrine is not applicable in this case because the rate charged for the insurance is not contested. The Commissioner maintained that the filed rate doctrine has not been extended to include insurance forms approved by a state agency and that the Commissioner's regulatory authority does not, and should not, immunize or otherwise preclude a claim against an insurance company for a violation of state law.

¶28 In this case, there is no evidence that Union Fidelity's rates for credit life insurance were set, reviewed or filed by a federal regulatory authority. Hence, Union Fidelity is not immunized under the filed rate doctrine for a claim for violation of state law. Based on the foregoing, we hold that the filed rate doctrine is not applicable in this case and we reject Union Fidelity's argument in that regard.

¶29 Union Fidelity also argues that the Montana Legislature limited the claims that an insured may bring against an insurer when it enacted § 33-18-242, MCA, and under that statute, postclaim underwriting is not an independent claim. Section 33-18-242(3), MCA, provides:

> An insured who has suffered damages as a result of the handling of an insurance claim may bring an action against the insurer for breach of the insurance contract, for fraud, or pursuant to this section, *but not under any other theory or cause of action.* An insured may not bring an action for bad faith in connection with the handling of an insurance claim. [Emphasis added.]

¶30 Contrary to Union Fidelity's contentions, Barbara points out that she is not asserting that postclaim underwriting is an independent claim, only that it has bearing upon the facts of this case because the Legislature has seen fit to define and prohibit postclaim underwriting in § 33-18-215, MCA. Barbara contends that while this prohibition is relevant to her claims of bad faith, fraud and malice, it bears most directly on her breach of contract claim and Union Fidelity's defense of rescission. Barbara maintains that absent such rudimentary underwriting as requiring fact-specific information regarding an applicant's medical history,

11

a material misrepresentation cannot occur, hence Union Fidelity's rescission of Clarence's application was improper as a matter of law.

¶31  Relying on *Schneider v. Minn. Mut. Life Ins. Co.* (1991), 247 Mont. 334, 806 P.2d 1032, the District Court denied Barbara's motion for summary judgment on the basis that "the bottom line question is a question of fact for a jury to determine." In that case, Jock Schneider (Jock) had purchased group life insurance through Minnesota Mutual Life Insurance Company (Mutual). In completing the application, Jock represented that he had not been hospitalized or consulted a physician during the last three years and that he had not been treated for the various health problems listed in the application. Sixteen days later, Jock died of an accidental gunshot wound to the head. During its investigation, Mutual learned that Jock had been under a physician's care for alcoholism and depression. Mutual rescinded the policy. *Schneider*, 247 Mont. at 336-37, 806 P.2d at 1034.

¶32  Jock's wife, Darlene, sued Mutual alleging breach of contract and seeking punitive damages. Mutual argued that recission was appropriate because the misrepresentation was material and that Mutual in good faith would not have issued the policy if Mutual had known about the doctor visits. Mutual appealed the district court's judgment in favor of Darlene. On appeal, this Court expressly stated that questions of materiality and of good faith are both questions of fact. *Schneider*, 247 Mont. at 339-40, 806 P.2d at 1036.

¶33  Therefore, we hold that the District Court did not err in denying Barbara's motion for summary judgment as there still remained genuine issues of material fact as to whether there was a misrepresentation on Clarence's part and, if so, whether that misrepresentation was

12

material. We also hold that the District Court did not err in denying Barbara's motion for judgment as a matter of law because there was sufficient evidence to justify submitting those issues to the jury.

¶34    Accordingly, we hold that the District Court did not err in denying Barbara's motion for summary judgment and motion for judgment as a matter of law.

## Issue 2.

¶35    *Whether the District Court erred in admitting into evidence at trial Clarence's medical records acquired by Union Fidelity after Barbara's claim had been denied and her Certificate of Insurance rescinded.*

¶36    The District Court admitted Clarence's medical records at trial on the basis that it was for the jury to decide whether there was a material misrepresentation made by Clarence such that Union Fidelity could rescind the insurance contract and that type of review would necessitate reviewing the medical records.

¶37    Barbara argues on appeal that these records were allowed into evidence absent any foundation establishing that they existed at the time Clarence purchased credit life insurance from Union Fidelity, or that they had been seen, read, or relied upon by Clarence, Barbara, or anyone at Union Fidelity.

¶38    Union Fidelity argues that the medical records for the time period prior to the insurance purchase were introduced as evidence of what Clarence knew. Union Fidelity further argues that the medical records for the time period after the insurance purchase were introduced as evidence that Clarence had not been successfully treated for cancer and that the cancer he was diagnosed with in 1996 caused his death in 1997.

13

¶39 We review a district court's ruling on evidentiary issues for an abuse of discretion. *Lopez v. Josephson*, 2001 MT 133, ¶ 14, 305 Mont. 446, ¶ 14, 30 P.3d 326, ¶ 14 (citing *Simmons Oil Corp. v. Wells Fargo Bank*, 1998 MT 129, ¶ 17, 289 Mont. 119, ¶ 17, 960 P.2d 291, ¶ 17). A district court has broad discretion to determine whether evidence is relevant and admissible. *Lopez*, ¶ 14. The question is not whether this Court would have reached the same decision, but, whether the district court acted arbitrarily without conscientious judgment or exceeded the bounds of reason. *Lopez*, ¶ 14.

¶40 In the case *sub judice*, we conclude that the District Court did not act arbitrarily without conscientious judgment or exceed the bounds of reason when it admitted Clarence's medical records into evidence at trial. In her brief on appeal, Barbara failed to identify any allegedly prejudicial information contained in Clarence's medical records, or show how the introduction of those records harmed the case. On the contrary, the District Court was acting within its discretion by allowing the members of the jury to view the medical records for themselves and make their own determinations as to Clarence's condition at the time he signed the Certificate of Insurance. Barbara was then free to call Clarence's doctors to explain how much of the information contained in the records had been revealed to Clarence and when.

¶41 Accordingly, we hold that the District Court did not err in admitting Clarence's medical records into evidence at trial.

**Issue 3.**

¶42 *Whether the District Court erred in instructing the jury that Clarence's opinion as to the condition of his health was to be determined under both subjective and objective tests.*

¶43 The District Court gave the following instruction to the jury requiring that they use a subjective test in evaluating Clarence's opinion as to the condition of his health:

> Where an applicant for life insurance certifies he is in good health, and he had reason to believe, and did believe, he was in good health, recovery may be had although it subsequently develops that this was not the case.

Instruction No. 18. However, over objection, the court also gave the following instruction to the jury requiring the use of an objective test:

> In determining whether Clarence Williams made a material misrepresentation, an omission, or concealed relevant facts in signing the insurance application at issue in this case, you must consider whether, based on the evidence presented, a reasonably prudent person, who knew what Clarence Williams knew at that time he signed the insurance application, would have understood that he was not in "good health."

Instruction No. 21.

¶44 During deliberations, the jury sent out the following question:

> Re: Instructions No. 18 & 21
> How do we balance these two instructions – What Clarence thought vs. what a reasonably prudent person would say.

After conferring with counsel, the Judge responded that the jury should simply follow all of the instructions the best they could.

¶45 Barbara argues on appeal that the jury was "gravely misdirected" by Instruction No. 21. She contends that the District Court erred in instructing the jury to apply the objective test of the "reasonably prudent person" because Montana long ago adopted a subjective standard for evaluating an applicant's "certification" as to his "good health."

15

¶46 A district court has discretion regarding the instructions it gives or refuses to give to a jury and we will not reverse a district court on the basis of its instructions absent an abuse of discretion. *Christofferson v. City of Great Falls*, 2003 MT 189, ¶ 9, 316 Mont. 469, ¶ 9, 74 P.3d 1021, ¶ 9 (citing *Kiely Const. L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶ 62, 312 Mont. 52, ¶ 62, 57 P.3d 836, ¶ 62). In reviewing whether a particular jury instruction was properly given or refused, we consider the instruction in its entirety, as well as in connection with the other instructions given and with the evidence introduced at trial. *Christofferson*, ¶ 9. The party assigning error to a district court's instruction must show prejudice in order to prevail, and prejudice will not be found if the jury instructions in their entirety state the applicable law of the case. *Christofferson*, ¶ 9.

¶47 The case before us on appeal involves an insurance application that sought only the best of the applicant's knowledge and belief as to his health. It did not request the disclosure of any facts. The law in Montana is to use a subjective standard for evaluating an applicant's "certification" as to his "good health." Hence, we agree with Barbara that the District Court erred in giving Instruction No. 21 requiring an objective test.

¶48 In *Lentz v. Prudential Ins. Co.* (1974), 164 Mont. 197, 520 P.2d 769, this Court held that an insurance applicant's signature upon a form attesting to his good health constitutes a statement of personal opinion, not a representation of fact. Lentz had signed an insurance application declaring that "to the best of my knowledge and belief I am now in good health." As the insurer later discovered, Lentz had been hospitalized just weeks before buying his insurance due to high blood pressure, back pain, abdominal aneurysm and because "his

16

kidneys weren't doing their full work." The insurer also learned that Lentz's doctor knew he was in terrible shape, but reassured Lentz that his health was improving in order to avoid frightening him to death. *Lentz*, 164 Mont. at 199-200, 520 P.2d at 770.

¶49    This Court refused to find that Lentz had misrepresented his health and stated instead:

> [W]here the applicant for life insurance certifies that his health is good according to the best of his knowledge and belief, a recovery may be had, on the death of the insured, if it appears that he had reason to believe and did believe, that at the time he was in good health, although it subsequently develops that this was not in fact his condition, for *his statement was not unqualified, but only to the extent of his knowledge and belief.*

*Lentz*, 164 Mont. at 203, 520 P.2d at 772 (emphasis added) (quoting *Couch on Insurance 2d*, § 35:150).

¶50    In this case, the jury instructions did not, in their entirety, state the applicable law of the case. As Barbara pointed out in her brief on appeal, it is small wonder that the jury sent out a question evidencing their total confusion as to how they were supposed to balance these patently contradictory instructions.

¶51    Accordingly, we hold that the District Court erred in instructing the jury that Clarence's opinion as to the condition of his health was to be determined under both subjective and objective tests.

¶52    In addition, the Certificate of Insurance that Clarence signed stated that all statements made in the Application for Insurance are considered to have been made "to the best of [his] knowledge and belief." Hence, we hold that any instruction on retrial of this matter should reflect Clarence's subjective knowledge--i.e., what he knew and what he believed. While

17

we do not intend to draft a specific instruction for the trial court, whatever instruction the parties and the trial court decide to use should reflect Clarence's subjective knowledge--i.e., what he knew and what he believed, without attempting to balance either as a matter of law. In other words, it would be up to the fact finder on retrial to decide what Clarence knew versus what he believed.

**Issue 4.**

¶53     *Whether the District Court erred by denying Union Fidelity's motions for summary judgment and for judgment as a matter of law on Barbara's claims of fraud and bad faith.*

¶54     Union Fidelity cross-appealed the District Court's denial of its motions for summary judgment and for judgment as a matter of law on Barbara's fraud and bad faith claims arguing that because Barbara failed to establish all nine elements of fraud, Union Fidelity was entitled to judgment as a matter of law on this issue and that § 33-18-242(3), MCA, expressly bars Barbara's bad faith claim.

¶55     Barbara argues that her fraud and bad faith claims were well supported as she and Clarence relied upon Union Fidelity's selling agent's promise of coverage and Union Fidelity's bad faith occurred *prior* to the application process when it failed to include fact-specific health questions on its application. Hence, she contends that § 33-18-242(3), MCA, which refers to the *handling* of an insurance claim, does not bar her bad faith claim. We agree.

¶56     As we noted previously in this Opinion, our standard of review in appeals from summary judgment rulings is *de novo*. *Wendell*, ¶ 9. We apply the same criteria applied by

18

the district court pursuant to Rule 56(c), M.R.Civ.P. The moving party must establish both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. Once the moving party has met its burden, the opposing party must present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact. *Hanson,* ¶ 11.

¶57 We also stated that this Court's standard of review of appeals from district court orders granting or denying motions for judgment as a matter of law is identical to that of the district court. *Marie Deonier,* ¶ 18. Judgment as a matter of law is properly granted only when there is a complete absence of any evidence which would justify submitting an issue to a jury and all such evidence and any legitimate inferences that might be drawn from that evidence must be considered in the light most favorable to the party opposing the motion. *Marie Deonier,* ¶ 18.

¶58 We hold that the District Court did not err in denying Union Fidelity's motion for summary judgment as there still remained genuine issues of material fact. We also hold that the District Court did not err in denying Union Fidelity's motion for judgment as a matter of law because there was sufficient evidence to justify submitting those issues to the jury. Finally, we hold that § 33-18-242(3), MCA, does not bar Barbara from bringing her bad faith claim on retrial.

¶59 In her concurring and dissenting Opinion, Chief Justice Gray faults the Court for not performing an in-depth analysis of Barbara's fraud and bad faith claims. Chief Justice Gray fails to recognize, however, that this Court's job is to determine whether the District Court

19

erred by denying Union Fidelity's motion for summary judgment and for judgment as a matter of law on Barbara's claims of fraud and bad faith. As previously stated, to prevail on a motion for summary judgment, the moving party must first establish the absence of genuine issues of material fact. In like manner, judgment as a matter of law is properly granted only when there is a complete absence of any evidence which would justify submitting an issue to a jury. Union Fidelity has not met either burden in this case and, contrary to Chief Justice Gray's position, it is not our job to try to resolve the underlying issues--that is what trials are for.

**Issue 5.**

¶60    *Whether the District Court erred by granting Barbara's motion in limine precluding Union Fidelity from presenting evidence about Barbara's and Clarence's bankruptcy.*

¶61    Union Fidelity argues that evidence of Barbara's and Clarence's bankruptcy was relevant to the issue of damages as well as to Clarence's credibility and state of mind. Union Fidelity asserts that the bankruptcy evidence establishes that both Barbara and Clarence knew they could not pay for the truck on the day they purchased it--evidence that they were not acting in good faith. Union Fidelity also argues that because Barbara's and Clarence's credibility was a central issue in this case, the evidence of bankruptcy was essential to Union Fidelity's defense.

¶62    Barbara argues, on the other hand, that the District Court properly prohibited Union Fidelity from offering evidence related to the bankruptcy because the quality of Barbara's and Clarence's financial planning is not relevant to their purchase of credit life insurance. And, as to Union Fidelity's claim that Barbara and Clarence were not acting in good faith when they purchased the truck, Barbara responds that "comparative bad faith" is not a defense to her claims. *See Stephens v. Safeco Ins. Co.* (1993), 258 Mont. 142, 852 P.2d 565.

¶63    We stated in Issue 2 of this Opinion that a district court has broad discretion to determine whether evidence is relevant and admissible. *Lopez,* ¶ 14. We further stated that the question is not whether this Court would have reached the same decision, but, whether

21

the district court acted arbitrarily without conscientious judgment or exceeded the bounds of reason. *Lopez*, ¶ 14.

¶64 We see no evidence here that the District Court acted arbitrarily without conscientious judgment or exceeded the bounds of reason. Accordingly, we hold that the District Court did not err by granting Barbara's motion *in limine* precluding Union Fidelity from presenting evidence about Barbara's and Clarence's bankruptcy.

**Issue 6.**

¶65 *Whether the District Court erred by failing to give Union Fidelity's instruction setting forth its defense theory.*

¶66 Union Fidelity maintains that although both parties proposed an instruction on Union Fidelity's statutory defense to Barbara's UTPA claims, the District Court failed to instruct the jury on the available defense. In short, the jury was never given the opportunity to consider Union Fidelity's defense.

¶67 Section 33-18-242(5), MCA, provides insurers with a defense against claims brought under the UTPA: "An insurer may not be held liable under this section if the insurer had a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue."

¶68 The District Court neglected to give either Barbara's or Union Fidelity's jury instruction on this issue. Because the jury found in Union Fidelity's favor, the failure to give that jury instruction would be harmless error were we to affirm the District Court in all respects in this case. However, because we are reversing and remanding for a new trial on

22

Barbara's claim of error in the jury instructions as determined in Issue 3, we also hold that the District Court erred by failing to give any instruction setting forth Union Fidelity's defense theory under the UTPA.

¶69 Accordingly, we hold that on remand the District Court is directed to give the jury an appropriate instruction setting forth Union Fidelity's defense theory under the UTPA.

## CONCLUSION

¶70 We affirm the District Court's denial of both parties motions for summary judgment and for judgment as a matter of law. We also affirm the District Court's denial of Barbara's motion to exclude Clarence's medical records and the granting of Barbara's motion to exclude evidence about Barbara's and Clarence's bankruptcy.

¶71 However, we hold that the District Court erred in instructing the jury that Clarence's opinion as to the condition of his health was to be determined under both subjective and objective tests. Therefore, we reverse and remand for a new trial at which instructions on Union Fidelity's defense theory must be given.

¶72 Affirmed in part, reversed in part and remanded for further proceedings consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER

23

/S/ JIM RICE

Chief Justice Karla M. Gray, concurring and dissenting.

¶73     I concur in the Court's opinion on all issues except Issue 4. With regard to Issue 4, I concur to a limited extent with the result as applied to the bad faith cause of action, and write separately to provide a basis for that result, which strikes me as somewhat lacking in the Court's opinion. I dissent from the Court's conclusion in Issue 4 that the District Court did not err in denying Union Fidelity's motion for summary judgment on Barbara's fraud claim. I would reverse the District Court on that claim and remand for entry of judgment in Union Fidelity's favor.

¶74     Both parties advance *Thomas v. Northwestern Nat. Ins. Co.*, 1998 MT 343, 292 Mont. 357, 973 P.2d 804, in support of their positions regarding bad faith. The Court does not discuss *Thomas*, but it is my view that *Thomas* supports Barbara's position that § 33-18-242(3), MCA, does not bar her bad faith cause of action insofar as it pertains to alleged pre-claim conduct by Union Fidelity.

¶75     In *Thomas*, a business and its owners (collectively, the business) purchased a commercial insurance policy in 1989 and renewed it annually through 1993. *Thomas*, ¶ 7. In 1990, the policy was amended to exclude coverage for pollution. *Thomas*, ¶ 10. A customer sued the business over a fuel oil spill that occurred in 1992, and the insurer refused to defend or indemnify the business. After the customer received judgment, the business sued for indemnification. *Thomas*, ¶ 8. The business alleged that, by failing to provide adequate notice of the amendment, the insurer acted negligently, breached an implied covenant of good faith and fair dealing and breached its fiduciary duty. *Thomas*, ¶ 11. The

24

district court granted summary judgment to the insurer. It reasoned in part that § 33-18-242(3), MCA--which delineates certain actions which an insured may bring as a result of an insurer's handling of an insurance claim and prohibits common law bad faith claims vis-a-vis the handling of a claim--precluded the business from pursuing common law theories. *Thomas*, ¶¶ 12-13, 31.

¶76 On appeal, we determined that "the [UTPA] addresses the relationship between an insured and an insurance company once a claim has been filed," and stated the business' causes of action "pertain to events that occurred prior to the handling of the claim." *Thomas*, ¶ 33. Noting the insurer's argument that "suit was filed by appellants only after their demand for insurance coverage was denied," we reasoned § 33-18-201, MCA--which generally prohibits unfair claim settlement practices--did not address the tort allegations raised in the complaint. *Thomas*, ¶ 34. Distinguishing cases involving "actual handling" of claims, we noted that "[h]ere, appellants allege pure common law claims without adding violations of the [UTPA]." *Thomas*, ¶ 36. We concluded that § 33-18-242(3), MCA, did not bar the common law causes of action. *Thomas*, ¶ 37.

¶77 Since *Thomas*, we have recognized that "§ 33-18-242(3), MCA, 'explicitly prohibits bringing an action for bad faith in connection with the handling of an insurance claim.'" *Watters v. Guaranty Nat. Ins. Co.*, 2000 MT 150, ¶ 51, 300 Mont. 91, ¶ 51, 3 P.3d 626, ¶ 51 (citation omitted), *overruled on other grounds*, *Shilhanek v. D-2 Trucking, Inc.*, 2003 MT 122, ¶ 21, 315 Mont. 519, ¶ 21, 70 P.3d 721, ¶ 21. The distinction between pre-claim events in *Thomas* and claim handling in *Watters* is entirely consistent with the statutes and I would expressly apply it here.

25

¶78   In her complaint, Barbara asserted Union Fidelity "tortiously breached the implied covenant of good faith and fair dealing in connection with the application process and underwriting[.]"  On appeal, Barbara contends Union Fidelity committed bad faith during the application and pre-claim underwriting process by failing to define terms such as "good health," failing to include health-specific questions on the application, and "ma[king] certain that neither rescission nor claim denial was discussed at the point of sale."  These allegations refer to conduct before the claim, not to the handling of the claim once made.  Therefore, I would apply *Thomas* and conclude that Barbara may proceed with her bad faith action only in relation to Union Fidelity's pre-claim application process and pre-claim underwriting.

¶79   Union Fidelity asserts, however, that "[t]here can be no dispute that [Barbara's] claims arise from the denial of the insurance claim."  As mentioned above, we noted a similar argument in *Thomas*, ¶ 34, and stated the alleged torts at issue there were not contemplated in § 33-18-201, MCA.  In my view, we improperly shifted the focus in *Thomas* from the insurer's argument about when the tort accrued to an analysis of whether the alleged tort was covered by the UTPA.  I would not follow *Thomas* in that regard.

¶80   The first sentence of § 33-18-242(3), MCA, limits causes of action available to "[a]n insured who has suffered damages as a result of the handling of an insurance claim[.]"  Our recognition of non-UTPA tort actions involving pre-claim conduct in *Thomas* indicates the "as a result of" language refers to the relationship between the insurer's conduct and the damages, rather than merely whether the damages arose before or after the claim.  Indeed, as in *Thomas*, the insured's damages in nearly every case involving pre-claim conduct will not arise until the insurer handles the claim.  Pursuant to *Thomas*, therefore, it is my view

26

that Barbara's bad faith action may proceed to trial on the theory that the alleged damages occurred "as a result of" Union Fidelity's alleged pre-claim conduct.

¶81 Union Fidelity also asserts, however, that the UTPA "precluded" Barbara from alleging both UTPA violations and bad faith in her complaint, and it supports this assertion with our reference to "pure common law claims" in *Thomas*, ¶ 36. In my view, our observation of the "pure common law claims" in *Thomas* did not establish a rule that a plaintiff must choose between asserting UTPA violations and common law torts. Indeed, *Thomas* did not involve alleged UTPA violations. Moreover, we recognized in *Thomas*, ¶ 35, that the UTPA is not an insured's exclusive remedy. Finally, of course, Rule 8(e)(2), M.R.Civ.P., specifically allows a plaintiff to plead alternatively. Here, Barbara has alleged various causes of action, some with respect to different factual assertions. I would conclude the UTPA does not prevent her from doing so.

¶82 In summary, I concur in the Court's conclusion that § 33-18-242(3), MCA, does not bar Barbara's bad faith cause of action, but I would limit the scope of that action to Union Fidelity's pre-claim conduct. Consequently, I disagree with the Court's apparent adoption in ¶ 30 of Barbara's argument that the prohibition against post-claim underwriting in § 33-18-215, MCA, relates to her bad faith allegation. I would conclude that, while she may assert post-claim underwriting in relation to some allegations, she may not do so in relation to the alleged pre-claim bad faith.

¶83 With respect to Barbara's fraud cause of action, the Court notes in ¶ 55 that Barbara argues her fraud allegation is "well supported as she and Clarence relied upon Union Fidelity's selling agent's promise of coverage[.]" On appeal, Barbara points to the selling

agent's deposition testimony that he promised "peace of mind."

¶84 A *prima facie* case of fraud consists of the following nine elements: (1) a representation; (2) the falsity of that representation; (3) the materiality of the representation; (4) the speaker's knowledge of the representation's falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the representation's falsity; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely on the representation; and (9) the hearer's consequent and proximate injury or damages caused by relying on the representation. *See In re Estate of Kindsfather*, 2005 MT 51, ¶ 17, 326 Mont. 192, ¶ 17, 108 P.3d 487, ¶ 17 (citations omitted). I imagine insurance agents generally promise coverage at the time of sale, and I do not believe a reference to "peace of mind" constitutes a guarantee of coverage in all circumstances. I would not permit this fraud claim to proceed to trial solely because a selling agent generally promised coverage and the insurer later denied a specific claim.

¶85 More importantly, the Court does not address Union Fidelity's reliance on Barbara's deposition testimony that the salesperson did not talk her and Clarence into buying insurance and did not make any misrepresentations or misleading statements. Thus, through Barbara's deposition, Union Fidelity established the absence of any genuine issue of material fact regarding, at least, the "falsity" and "reliance" elements of Barbara's fraud claim.

¶86 The burden then shifts to Barbara to present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact. *See Hanson v. Water Ski Mania Estates*, 2005 MT 47, ¶ 11, 326 Mont. 154, ¶ 11, 108 P.3d 481,

28

¶ 11 (citations omitted). From my perspective, Barbara's reference to the agent's "peace of mind" statement and the general promise of coverage relied on by the Court do not constitute material and substantial evidence raising a genuine issue of material fact with respect to the "falsity" and "reliance" elements of the fraud claim. Therefore, in light of Barbara's deposition testimony and the generic nature of the allegedly fraudulent representations, I dissent from the Court's conclusion that Barbara may proceed with her fraud claim.

¶87 The Court's response to this concurring and dissenting opinion relating to Barbara's bad faith and fraud claims consists primarily of sweeping statements about my inability to recognize our standards of review of a district court's granting of summary judgment and judgment as a matter of law. There is no question that I understand those standards. Nor is the Court correct that I have faulted it for not performing an in-depth analysis of the fraud and bad faith claims or "resolved" the underlying issues which ought to be tried.

¶88 With regard to the bad faith claim, I state clearly above that I concur in the result, but do not believe the Court presents an adequate analysis of whether the District Court erred in denying Union Fidelity's motion for summary judgment in that regard. Yes, we determine on appeal whether the moving party met its burden and was entitled to judgment as a matter of law. That standard generally requires us, however, to actually make determinations based on the record and the law. The Court's opinion on this portion of Issue 4 does neither.

¶89 The Court presents Union Fidelity's arguments in one paragraph, followed by Barbara's arguments in the next; the third paragraph properly sets forth the standards relating to summary judgment; and the fourth paragraph sets out the standards relating to judgment as a matter of law. The Court then immediately "holds" that the District Court did not err

29

in denying the motion for summary judgment on bad faith or the motion for judgment as a matter of law because "there still remained genuine issues of material fact[,]" and "there was sufficient evidence to justify submitting those issues to the jury." It further holds that § 33-18-242(3), MCA, does not bar Barbara's bad faith claim. My concern with the Court's opinion is that it sets forth nothing of record or of law in these regards.

¶90 What genuine issues of material fact or evidence sufficient to go to the jury has the Court located? What of the legal arguments and authorities advanced by the parties? Why does § 38-18-242(3), MCA, not bar the bad faith claim? These questions--and my attempt to provide legal analysis--are not failures on my part to recognize the standards relating to summary judgment and judgment as a matter of law; nor do I resolve in any way underlying issues which should go to the jury. The Court's opinion--in my view--is simply devoid of the substantive analysis we generally include to give appropriate guidance to the parties and the trial court in this case, and practitioners and trial courts in future cases.

¶91 On the off chance that the Court truly is missing the point of my concurring and dissenting opinion--especially with regard to providing an analysis to serve as a basis for its holdings--it is appropriate to look to recent opinions by this Court on summary judgment issues. Since the end of February this year, we have issued more than a dozen published opinions addressing summary judgment issues. *See, e.g., Hi-Tech Motors, Inc. v. Bombardier Motor Corp. of Am.*, 2005 MT 187, 328 Mont. 66, ___ P.3d ___; *Bonilla v. Univ. of Mont.*, 2005 MT 183, 328 Mont. 41, ___ P.3d ___; *Eves v. Anaconda-Deer Lodge County*, 2005 MT 157, 327 Mont. 437, 114 P.3d 1037; *Seven Up Pete Venture v. State*, 2005 MT 146, 327 Mont. 306, 114 P.3d 1009; *Richards v. Knuchel*, 2005 MT 133, 327 Mont.

249, 115 P.3d 189; *Cole v. Valley Ice Garden, L.L.C.*, 2005 MT 115, 327 Mont. 99, 113 P.3d 275; *In re Dorothy W. Stevens Revocable Trust*, 2005 MT 106, 327 Mont. 39, 112 P.3d 972; *Gullett v. Van Dyke Const. Co.*, 2005 MT 105, 327 Mont. 30, 111 P.3d 220; *Montana Mountain Products v. Curl*, 2005 MT 102, 327 Mont. 7, 112 P.3d 979; *Rolison v. Deaconess*, 2005 MT 95, 326 Mont. 491, 111 P.3d 202; *Carter v. Mississippi Farm Bureau Cas.*, 2005 MT 74, 326 Mont. 350, 109 P.3d 735; *Valley Victory Church v. Sandon*, 2005 MT 72, 326 Mont. 340, 109 P.3d 273; *GRB Farm v. Christman Ranch, Inc.*, 2005 MT 59, 326 Mont. 236, 108 P.3d 507; *Travelers Cas. v. Ribi Immunochem Research*, 2005 MT 50, 326 Mont. 174, 108 P.3d 469. None of those opinions addresses summary judgment/judgment as a matter of law issues without either factual or legal analysis or both.

¶92 For these reasons, I cannot join the Court's opinion on Issue 4.


/S/ KARLA M. GRAY